290 So.2d 874 (1974)
Earl HARGRODER et al.
v.
COLUMBIA GULF TRANSMISSION CO.
No. 53749.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
J. Nilas Young, Young & Burson, Ltd., Eunice, for plaintiffs-applicants.
William C. Broadhurst, Crowley, for defendant-respondent.
SANDERS, Chief Justice.
This Court granted review in this matter to consider the liability of a pipeline company to a farm lessee, with an unrecorded lease, for damage to the lessee's crops during the construction of the pipeline. The Court of Appeal dismissed the farm lessee's suit on a peremptory exception. We hold that the farm lessee has both a cause and right of action and remand the case for further proceedings.
On March 30, 1972, Earl and Irma Cannon Hargroder, landowners, filed suit against defendant, Columbia Gulf Transmission Company, to recover damages caused by the extension of defendant's pipeline across their property. In the action, plaintiff, Dr. H. H. Hargroder, a farm lessee, sued to recover for damages to his crops and machinery, occurring on and off the right of way. He also sought damages for mental pain and anguish.
To the petition, Columbia filed a peremptory exception of no cause and no right of action. After receiving evidence, the trial court judge sustained the exception as to Dr. Hargroder, because his farm lease was unrecorded. The court overruled the exception as to the landowners, holding that the release of damages applied only to the landowners' damages on the right of way and that they had a right to sue for their off-right-of-way damages.
The lessee appealed. The court of appeal affirmed the judgment of the district court, holding that the right of way contract contained no stipulation pour autrui in favor of lessee. 278 So.2d 864.
*875 Columbia Gulf Transmission Company is the grantee of a right of way to operate a pipeline upon a tract of land situated in Acadia Parish, Louisiana, consisting of 24.7 acres. The land is owned by Earl and Irma Hargroder.
H. H. Hargroder alleges that prior to January 17, 1967, he leased the property from Earl and Irma Hargroder; that he used it to grow coastal bermuda grass for hay; that coastal bermuda grass was harvested in the years 1967, 1968, 1969, and 1970.
On January 17, 1967, Columbia entered into a right of way agreement with lessors; the agreement was recorded on February 9, 1967. The agreement contains the following pertinent clauses:
"Grantee hereby agrees to bury any pipeline (exclusive of appurtenances customarily located above ground) to a sufficient depth so as not to interfere with normal cultivation of the soil after construction thereof, and agrees to pay such damages which may arise to growing crops, timber, or fences from the construction of said line and appurtenances and to pay such damages which may arise to growing annual crops or fences from the maintenance, alteration, repair, removal, change of size, or replacement thereof.
"It is hereby understood that the grantee, its successors and assigns, shall not be obligated to pay grantors or any subsequent owner of the hereinabove described premises, any damages resulting from the construction of the first pipeline authorized hereunder, such damages having been anticipated and paid in advance at the time of execution of this instrument." (Italic ours).
During 1970, Columbia utilized its right of way and constructed a natural gas pipeline across the land. Thereafter, the tenant, H. H. Hargroder, together with his lessors, Earl and Irma Hargroder, filed suit to recover damages, allegedly caused during the construction of the pipeline. Their petition avers that the damage was due "to surface disturbance and debris thrown off the right of way."
The record does not reflect whether the trial judge sustained the objection of no cause of action or no right of action. Although often pleaded together, the objections raise different issues.
In Roy O. Martin Lumber Co. v. St. Denis Securities Co., 225 La. 51, 72 So.2d 257 (1954), this Court distinguished the two exceptions as follows:
"Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain this suit, i. e., . . . his interest in the subject matter of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. Outdoor Electric Advertising v. Saurage, 207 La. 344, 21 So.2d 375; Termini v. McCormick, 208 La. 221, 23 So.2d 52 and Bartholomew v. Impastato, La.App., 12 So.2d 700. The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist. Soniat v. White, 153 La. 424, 96 So. 19; Schmidt v. Conservative Homestead Association, 181 La. 369, 159 So. 587; Duplain v. Wiltz, supra [La. App., 174 So. 652] and La Casse v. New Orleans, T. & M. R. Co., 135 La. 129, 64 So. 1012."
See also L'Enfant, Civil Procedure, 31 La.L.Rev. 343 (1970-71); McMahon, Civil Procedure, 15 La.L.Rev. 376 (1957-58); McMahon, Civil Procedure, 18 La.L.Rev. 103 (1954-55).
In the present case, plaintiff's petition alleges that he was a farm lessee, engaged in growing crops on the farm, and that his crops and machinery were damaged by the defendant during the course of construction. *876 The damages are itemized. No documents are annexed to the petition, and the petition does not specify whether the lease is recorded or unrecorded. Hence, it is apparent that plaintiff's petition sets forth a cause of action for damages.
The trial judge sustained the peremptory exception after receiving evidence.[1] Because evidence cannot be considered on the objection of no cause of action, at least if introduction is opposed, we assume that the trial judge found merit in the objection of no right of action.
Hence, the issue presented is whether or not the plaintiff, H. H. Hargroder, has an interest to be vindicated in this suit. See LSA-C.C.P. Art. 927. The final determination hinges upon whether or not the right of way agreement, between Columbia and the landowners, contains a stipulation pour autrui in favor of the lessee.
Article 1890 of the Louisiana Civil Code provides:
"A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
In dealing with an identical question in Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969), this Court adopted the following criteria for determining whether a stipulation pour autrui has been made:
"(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the . . . [promisor] will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936)."
In the servitude agreement, Columbia "agrees to pay such damages which may arise to growing crops, timber, or fences from the construction of the [pipeline]." The agreement contains no restriction as to beneficiaries. Applying the above criteria, we conclude that it is a stipulation pour autrui, of which the farm lessee and crop grower can avail himself. In fact, we discern no legal difference between the present provision and that in Andrepont v. Acadia Drilling Co., supra, which we held to be a stipulation pour autrui.[2] Hence, that decision is controlling here, and plaintiff has a right of action.
Having found both a cause and right of action, the peremptory exception must be overruled. We are not here concerned with the evidentiary basis or scope of liability. These matters are properly determined at the trial on the merits.
For the reasons assigned, the judgment of the Court of Appeal is reversed, the peremptory exception of no cause and right of action is overruled, and the case is remanded to the district court for further *877 proceedings according to law and consistent with the views herein pressed. All costs in the appellate courts are assessed against the defendant, Columbia Gulf Transmission Co. All other costs shall await the outcome of the suit.
BARHAM, J., concurs with reasons.
TATE, J., concurs and assigns reasons.
DIXON, J., concurs.
CALOGERO, J., concurs, agrees with result.
BARHAM, Justice (concurring in decree only).
In Andrepont v. Acadia Drilling Company, Inc., 255 La. 347, 231 So.2d 347 (1969), plaintiff, a lessee under an unrecorded lease, sued on a contract between the lessor and the defendant claiming that the contract provided a stipulation pour autrui. On first hearing we applied R.S. 9:2721, which requires recordation of surface lease interests in immovables if those proprietary interests are to have effect against third parties contracting in relation to the immovable. Since the lessee had only a verbal lease we held that a third party who later entered into a mineral lease with the landowner was not obligated to pay the lessee for crop damages which were previously discharged in payment to the landowner. On rehearing, the majority found that a stipulation pour autrui existed in favor of the surface lessee, under the mineral lease, and disregarded any question of the effect of recordation of surface leases on third persons contracting with the owner of the immovable. Unfortunately, in neither hearing did the lessors argue delictual responsibility of the defendant to the surface lessee, nor did the Court notice the possibility of the existence of such liability.
In the case at hand, the majority of this Court err in finding that the agreement between the landowner and the defendant contained a stipulation pour autrui in favor of the plaintiff-lessee. Although the defendant agreed to pay "such damages which might arise to growing crops, timber, or fences from the construction of said line and appurtenances" the grantors, the landowners, in the very next paragraph stipulated that damages resulting from the construction of the first pipeline which is the pipeline construction we consider, have "* * * been anticipated and paid in advance at the time of the execution of this instrument." It is not reasonable to conclude a stipulation for these damages running in favor of another when they have been stipulated away specifically by the landowner. Moreover, plaintiff here claims damages for more than that which is provided for in the contract. For example, he specifically makes heavy claim for damages to his farm machinery caused by the defendant's construction of the pipeline across the land. If there were a stipulation pour autrui, the damages the lessee seeks here exceed the contractual obligation under the alleged stipulation. It is impossible to find any contractual liability for damages to property other than crops, timber and fences.
I am of the opinion that the lessee's right here (as in the Andrepont case) arises under Civil Code Article 2315. A. Yiannopoulos, Standing Crops: Movables or Immovables, 17 Loyola L.Rev. 323, 333-334 (1971); 31 La.L.Rev. 208, 209 (1971). Recordation, which serves to separate the crops on the land into the class of movables as to third parties, is not required as to tort-feasors. Tort-feasors are not of the class of third parties contemplated in R.S. 9:2721. Under Civil Code Article 2315 he who causes damage to another through his fault must repair it. Standing under 2315 merely requires a proprietary interest in the action for damages. Ownership of a thing is not a prerequisite to standing in court in a delictual action. The mere suffering of damage in some form is the prerequisite for plaintiff's *878 standing. However, the plaintiff-lessee in this case had a valuable interest in the growing crops and in the machinery which he used in farming the landowner's land. The crops and the machinery were destroyed by the intentional act of the defendant. The rights that the lessee has as against a tort-feasor are separate and apart from the real rights arising under the lease with the landowner, which may be exercised against only the landowner, in the absence of recordation. The right which plaintiff attempts to assert here is a personal right. Plaintiff has stated a cause and right of action against the defendant under 2315. I concur in the decree.
TATE, Justice (concurring).
I do not see that the tenant's right to recover damages for his crops depends on the necessity of a stipulation pour autrui in the agreement between the landowners and Columbia. Since the tenant has a proprietary interest in his crops destroyed by Columbia, he should be able to intervene directly in an action between Columbia and the landowners to assert his individual claim, as well as himself to bring suit directly.
I cannot see how Columbia would be "affected", within the meaning of La.R.S. 9:2721, by the absence of a recorded lease, unless it entered on the premises solely on the faith of the public records and without any independent knowledge that the growing crops on the land did not belong to the landowners with whom it had contracted. At any rate, this would be a matter of factual defense to the merits, not triable in limine by exception.
In the absence of a contractual agreement to pay for damages to the tenant's crop, Columbia would be liable for fault, if proved, under Civil Code Article 2315 for destroying growing crops, unless the ostensible owner had agreed to let Columbia destroy his crops. See Yiannopoulos, Standing Crops: Movables or Immovables, 17 Loyola L.Rev. 323, 333-34 (1971) and 31 La.L.Rev. 208-09 (1971). In the latter case, the non-owners who ostensibly asserted title to the crops might be primarily liable to the tenant whose crop was destroyed, but I am not sure that Columbia might not be solidarily liable nevertheless (with the right to recover over from those who misled it) as an actor who destroyed at its peril of non-exoneration property which truly belonged to another. See: Civil Code Articles 2315, 2324; Restatement of Torts 2d, Sections 218, 222A, 224A, 226, 244 (actor not relieved of liability for intentional destruction of property of another by mistake not induced by such owner), 253 (1965).
I note these reservations, because I think our majority decision could be based on a broader rationale. Within the framework of the issues posed by our opinion, however, I concur fully with our majority's resolution of them.
NOTES
[1] A note of evidence appears at page 11 of the transcript. The right of way agreement and a construction damage receipt were admitted in evidence. The agreement appears at Tr. 8-9 and the receipt at Tr. 10. It was stipulated that Dr. Hargroder's lease was unrecorded.
[2] The mineral lease damage clause in Andrepont v. Acadia Drilling Co., supra, provided: "The Lessee shall be responsible for all damages caused by Lessee's operations."