424 So.2d 348 (1982)
E.K. OSWALT, Jr., Plaintiff-Appellee,
v.
IRBY CONSTRUCTION COMPANY and Liberty Mutual Insurance Company, Defendants-Third Party Plaintiffs-Appellants.
No. 15028.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
*349 Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for defendants-third party plaintiffs-appellants, Irby Const. Co. and Liberty Mut. Ins. Co.
Theus, Grisham, Davis & Leigh by Phil D. Myers, Monroe, for third party defendant-plaintiff-in-reconvention-appellant, Louisiana Power & Light Co., Inc.
Voelker, Ragland, Brackin & Crigler by Frank Voelker, Jr., Lake Providence, for plaintiff-appellee E.K. Oswalt, Jr.
Before HALL, JASPER E. JONES and NORRIS, JJ.
HALL, Judge.
Plaintiff, E.K. Oswalt, Jr., filed suit on June 21, 1973 against Irby Construction Company and its liability insurer, Liberty Mutual Insurance Company, for damages to plaintiff's rice crop growing in two separate fields which plaintiff was farming under a written unrecorded agricultural lease from the landowner. Plaintiff alleged that the damages resulted from Irby's construction of power lines across the rice fields pursuant to a construction contract between Irby and Louisiana Power & Light Company which had a right of way across the property previously granted by the landowner. Plaintiff alleged that the defendant negligently crossed the rice fields with track vehicles causing breaks in water retaining *350 levees which resulted eventually in loss of water level control capability and reduced rice production, both on and off the right of way. Plaintiff sought damages in the total amount of $25,485.45 for loss of rice production and expenses related to the alleged damages.
Defendants filed an exception of prescription, alleging that the activities complained of occurred on June 3, 1972 and that the suit was brought outside the one-year prescriptive period provided by LSA-C.C. Art. 3536. In opposition to the exception plaintiff asserted the applicability of the two-year prescription of LSA-R.S. 9:5624.
Defendants also filed an exception of no right and no cause of action, maintaining that Irby's construction activities were performed under a recorded right of way granted to Louisiana Power & Light in 1966 by plaintiff's lessor, precluding any claim for damages by plaintiff who was the holder of an unrecorded agricultural lease on the premises granted in 1970, specifically subject to any existing servitude agreements.
Defendants answered plaintiff's petition, denying liability. Defendants asserted alternatively a third-party demand against Louisiana Power & Light alleging their entitlement to recover any sum for which they are liable to plaintiff from the third-party defendant under the provisions of the construction contract between the parties.
Louisiana Power & Light answered the third-party demand, denying liability to the third-party plaintiff. The third-party defendant also filed a reconventional demand against Irby seeking attorney fees under the hold harmless and indemnity provisions of the construction contract.
The case was tried in May 1981. In written reasons for judgment the trial court concluded that (1) as stipulated by the parties the construction of an electrical transmission line was for public purposes and, therefore, the two-year prescriptive period is applicable; (2) Irby was at fault in crossing and damaging plaintiff's levees without first giving notice of its contemplated activities and in failing to properly repair the damaged levees, and Irby's actions resulted in damage to plaintiff's rice crop; (3) plaintiff had a proprietary interest in the growing crop and was not precluded from recovering for damages to the crop by reason of the right of way grant under which the landowner retained the right to farm the property; (4) although the right of way grant did not contain a stipulation pour autrui, obligating the grantee to pay crop damages to plaintiff, plaintiff was entitled to recovery for his damages in tort under LSA-C.C. Art. 2315; and (5) Louisiana Power & Light was jointly liable with Irby to the plaintiff and, therefore, was liable for contribution to Irby to the extent of one-half of the award in favor of plaintiff.
Judgment was rendered in favor of plaintiff against Irby and its insurer for $15,913.02 representing an award of $9,668.96 for loss of rice production on the 102-acre field, $2,003.06 for damage to the rice crop growing within the right of way on the 300-acre field caused by vehicular traffic across the right of way, and $4,241 expenses incurred by plaintiff. Judgment was also rendered ordering contribution by Louisiana Power & Light to Irby and its insurer to the extent of one-half of the award to plaintiff. The reconventional demand of Louisiana Power & Light Company was denied.
Irby and its insurer and Louisiana Power & Light appealed. The plaintiff did not appeal nor answer the appeal. On appeal Irby and Liberty Mutual urge that having found the damage to the plaintiff's crop was caused by Irby as necessary and incidental to the erection of the transmission line, the trial court erred in concluding that the law afforded the plaintiff as the holder of an unrecorded agricultural lease a remedy against the defendant who was exercising the rights specifically granted in a previously obtained and recorded right of way permit. Citing Andrepont v. Acadia Drilling Company, 255 La. 347, 231 So.2d 347 (1969) and Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La.1974), defendants argue that plaintiff cannot recover in the absence of a stipulation pour *351 autrui, which the trial court correctly found was not contained in the right of way instrument. Defendants reurge their plea of prescription, contending that two-year prescription does not apply where the damage resulted from negligent actions of the defendant. Finally, defendants contend that they are entitled to be fully indemnified by Louisiana Power & Light under provisions of the construction contract requiring Louisiana Power & Light to furnish the right of way and obligating Louisiana Power & Light to pay for crop damages within the right of way.
Louisiana Power & Light makes essentially the same arguments relative to the plaintiff's right to recover and additionally contends that plaintiff had no right to build the levees on the right of way because of prohibitory clauses in the right of way grant and that damages for crop losses sustained within the right of way were settled with the landowner at the time the right of way was granted. Louisiana Power & Light further argues that under the hold harmless and indemnity provisions of the contract it has no liability to third-party plaintiff and that under these same provisions Irby is liable to it for its attorney fees incurred in defending the third-party demand.

Context Facts
In 1966 the landowner granted to Louisiana Power & Light Company a right of way and servitude across several sections of land in East Carroll Parish for the purpose of constructing, operating, and maintaining electric power lines. The grantee was granted the right to open, clear, and maintain the right of way and to keep the same clear of underbrush, trees, other growths, and any obstruction which might interfere with or constitute a hazard to the operation of the electric lines. It was stipulated that the right of way would not be fenced by the grantee and that the grantor shall have full use of the right of way except for the purposes for which same was conveyed to the grantee and except for uses which interfere with the enjoyment by grantee of the rights and servitude conveyed, and provided that no building or structure of any nature or kind shall be constructed on said right of way. The instrument provided that right of way and timber damage was settled by the execution thereof, and the grantee agreed to pay any other damages not included in the above settlement which may be inflicted by it in the construction and maintenance of the lines, provided an itemized claim thereof shall be presented by the grantor in writing. The right of way grant was duly recorded.
In December 1970 the landowner executed a written agricultural lease to the plaintiff which included the two fields crossed by the right of way previously granted to Louisiana Power & Light. The lease provides that it is subject to any existing gas, electrical, or other utility or public easements or rights of way. The lease was not recorded.
Plaintiff grew a rice crop on the leased property in 1971 and planted rice again in early 1972. Levees for the control of water in the rice fields which must be flooded at critical stages were constructed by plaintiff traversing the fields including the area within the right of way. In May 1972 Irby began work along the right of way pursuant to its contract with Louisiana Power & Light, first building foundations for the necessary poles, then erecting the poles. When this work was done the fields had been planted, the rice was up, but the fields had not been flooded. About a week after the poles were put up, on June 3 or 4, Irby pulled the transmission lines onto the poles, using a modified tank and other heavy equipment. By this time the 102-acre field had been flooded but the 300-acre field had not.
When the Irby crew got to the 102-acre flooded field its foreman telephoned supervisory personnel to obtain instructions as to how to proceed. He was instructed to cross the levees with the equipment and to repair any resulting damage to the levees as he went along. There was no attempt by Irby personnel to contact plaintiff or his lessor.
As the heavy equipment traversed the fields it damaged the rice crop planted on *352 the right of way in both fields. In the 102-acre field the equipment caused numerous breaks in the levees on the right of way which set off a chain reaction causing breaks in the levees throughout the field resulting in some areas having too little water and other areas having too much water. The Irby crew made efforts to repair the levees as they went along but through lack of experience and knowledge of how to do the levee work were unsuccessful in their repair efforts.
Oswalt discovered the damage on June 4 and promptly contacted Irby's representatives. Irby continued efforts to repair the levees for approximately two weeks but its attempts were unsuccessful and Irby abandoned its efforts by June 15. Thereafter plaintiff with his own men and equipment continued to try to repair the levees and control the water but his efforts were largely unsuccessful.
It was established that plaintiff suffered a loss of 42 bushels per acre on 69.2 acres of the 102-acre field because of inability to control the flooding and that the average price for rice harvested from that field was $3.30 per bushel. It was also established that plaintiff suffered a 50 percent loss of his crop growing within the right of way in the 300-acre field.

Prescription
Appellants contend that the trial judge erred in applying the two-year prescription of LSA-R.S. 9:5624[1], which applies when private property is damaged for public purposes. It was stipulated by the parties that the construction of the power line was for public purposes. Appellants maintain however that the two-year period is applicable only for damages resulting from intentional and necessary work and is not applicable to a claim for damages resulting from negligent acts. Appellants rely on Perkins v. Simon, 265 So.2d 804 (La.App. 3d Cir.1972) which held that the two-year prescriptive period is applicable only when the damage to private property is the intentional or necessary result or consequence of the construction work incidental to a public purpose and is not applicable to a claim for damages resulting exclusively from the negligent acts or omissions of the person causing the damage.
More closely in point is Miller v. Colonial Pipeline Company, 173 So.2d 840 (La.App. 3d Cir.1965). In that case irrigation levees on a rice farm were damaged in the course of construction of a pipeline by the defendant. The court held that the two-year prescriptive period was applicable since the irrigation levees were destroyed as an intentional and necessary consequence of the construction of the pipeline. The same is true in the instant case. The public purpose work which caused the damage was intentional and necessary and it matters not for purposes of determining the applicable prescriptive period that the work was done in a negligent manner or that the full extent of the damages might have been unintentional. See also Angelle v. State, 212 La. 1069, 34 So.2d 321 (1948); Florsheim v. Department of Highways, 201 So.2d 155 (La.App. 2d Cir.1967).
The trial court correctly held that the two-year prescriptive period is applicable and that, accordingly, plaintiff's suit was timely filed.

Irby's Liability
It is well established that standing or growing crops are susceptible of ownership separate from the ownership of the land on which they are grown and that such crops are owned by a predial lessee as movables by anticipation. Jardell v. Sabine Irrigation Co., Inc., 346 So.2d 1365 (La.App. 3d Cir.1977). See Yiannopoulos, Louisiana Civil Law Treatise, Property, 2d Edition, §§ 88 and 91. The courts have often recognized the right of a predial lessee to recover under LSA-C.C. Art. 2315 from those who damage his growing crops. Moity v. Petty-Ray Geophysical, Inc., 369 So.2d 225 (La. App. 3d Cir.1979); Watkins v. Gulf Refining *353 Co., 206 La. 942, 20 So.2d 273 (1944); Hebert v. United Gas Pipeline Company, 210 So.2d 71 (La.App. 1st Cir.1968); LeJeune v. J.W. Cappel Trust, 405 So.2d 647 (La.App. 3d Cir.1981); Jardell v. Sabine Irrigation Co., Inc., supra.
Under LSA-C.C. Art. 2703 the lessee has a right of action against any person not claiming a right to the premises for damages caused by disturbance of the lessee's use or enjoyment of the leased premises, regardless of whether the lease is recorded. Bergeron v. Con-Plex, Inc., 255 So.2d 397 (La.App. 1st Cir.1971); Cane River Needle Art v. Reon, Inc., 335 So.2d 751 (La.App. 3d Cir.1976), writ refused 339 So.2d 15 (La. 1976).
It is clear, therefore, that the plaintiff lessee had a proprietary interest in his growing crop and a right and cause of action against the defendant Irby to recover for damages to his crop growing outside of the right of way caused by the defendant's fault. Defendant had no rights and claimed no rights to the leased premises outside of the limits of the 100-foot right of way. As to the damage to the crop growing outside of the right of way, appellant's argument that plaintiff's lease agreement must be recorded pursuant to LSA-R.S. 9:2721 as a prerequisite to recovery is plainly without merit. The requirement of recordation "is established in favor of persons who acquire interest in the land in reliance on public records. It should have nothing to do with persons who cause damage to the crops of a lessee." Yiannopoulos, Louisiana Civil Law Treatise, Property, 2d Edition, § 91.
No award was made for damages to the crop growing outside of the right of way in the 300-acre field. As to the 102acre field, the award was principally for off right of way crop damages caused by defendant's actions in breaking the levees on the right of way and failing to properly repair them, as distinguished from damage to that part of the crop growing on the right of way caused directly by the passage of the vehicles over the growing plants. Defendant's fault under LSA-C.C. Art. 2315 could be predicated by analogy to LSA-C.C. Art. 667 simply on the use of the property over which it held a servitude in such a manner as to cause injury to adjacent property. Charia v. Stanley, 359 So.2d 291 (La.App. 4th Cir.1978). Additionally, however, defendant was negligent in failing to notify the owner of the crop of its intention to cross the levees, in which case the damages could have been substantially minimized if not entirely prevented, and in failing to properly repair the levees after they were damaged.
Although defendant had the right to construct the line on the right of way without undue interference, it did not have the right to engage in construction activities in utter disregard of prospective damage to the crop growing on and off the right of way. The right of way grant does not negate defendant's duty to act with reasonable care while on the landowner's property or give the defendant the right to negligently or unreasonably damage the crop being grown on the landowner's property. Conversely, as contractor for the holder of a servitude, Irby was obligated to minimize the burden of his charge on the land. Bd. of Com'rs of Port of N.O. v. Ill. Cent., Etc., 379 So.2d 838 (La.App. 4th Cir.1980); LSA-C.C. Art. 748, formerly Art. 777 and LSA-C.C. Art. 745, formerly Art. 774. Irby's actions were negligent and unreasonable and it is thus answerable to plaintiff for his damages.
Appellants argue that plaintiff had no right to build the levees on the right of way because of the prohibition in the right of way instrument against the construction of any building or structure thereon. The agreement contemplated that the grantor could continue to use the right of way for normal agricultural activities and certainly this right could be exercised by the grantor through agricultural lessees. Small rice levees are nothing more than rows or terraces normally used in agricultural practices, and essential to rice farming. Such levees are not "buildings or structures" as those terms are used in the agreement, and they would not normally interfere with the *354 construction and maintenance of an electrical line.
There is nothing in the record which suggests that the levees constituted a barrier to Irby's efficiently completing the construction of the transmission line across the right of way, and with the exercise of reasonable care the off right of way damage could have been prevented.
The award for off right of way crop damage is correct and will not be disturbed.
As to the property within the limits of the right of way, plaintiff's lease was taken subject to the prior recorded right of way grant under the public records doctrine and under the specific provision in the lease making it subject to existing utility easements and rights of way. In the absence of negligence on the part of the grantee of the servitude or an unreasonable exercise of the grantee's rights, the plaintiff lessee is not entitled to recover from the grantee or its contractor for damages to his crop growing within the right of way caused by the operations of the grantee conducted pursuant to the rights granted in the right of way instrument, unless the grantee obligated himself by a stipulation pour autrui contained in the right of way instrument to pay for damages to the crops of the grantor's lessee growing on the right of way. Andrepont v. Acadia Drilling Company, 255 La. 347, 231 So.2d 347 (1969) and Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La. 1974); cf. Sick v. Bendix-United Geophysical Corporation, 341 So.2d 1308 (La.App. 1st Cir.1977).
Here the landowner granted to Louisiana Power & Light a right of way for the construction of an electric power line which gave the grantee the right to carry out the operations necessary to construct the line. Construction of the line necessarily required the traversing of the right of way by heavy equipment which would necessarily cause damage to any crops growing within the limits of the right of way. By virtue of the clause allowing the landowner to continue to use the right of way and the clause by which the grantee agreed to pay future damages upon claim presented by the grantor, the grantee contractually agreed to pay the landowner for damages to future crops grown on the right of way, and such damages were not settled upon the original execution of the right of way instrument. Unlike the grants involved in the Andrepont (oil and gas lease) and Hargroder (right of way) cases, the right of way grant here did not contain a stipulation pour autrui by which the grantee agreed to pay damages to third parties, since the agreement to pay future damages was expressly limited to claims submitted by the landowner. Accordingly, the plaintiff lessee who took the lease subject to previously granted rights of way has no right to recover damages to his crop growing on the right of way arising out of the reasonable, necessary activities of the grantee or its contractor in the exercise of the grantee's rights under the right of way instrument.
The trial court awarded plaintiff $2,003.06 for a 50 percent loss of his crop growing on the right of way across the 300-acre tract caused by vehicular traffic across the right of way. Plaintiff is not entitled to recover for this item of alleged damage caused by the reasonable and necessary exercise of the grantee's rights under the right of way instrument and the award will be reduced by this amount.
On the 102-acre tract the trial court awarded damages for reduced production on a 69.2-acre parcel of the tract, which included 1.6 acres in the right of way. Plaintiff testified his crop within the right of way was damaged by vehicular traffic in the same manner as the crop growing on the right of way across the 300-acre tract. Plaintiff is not entitled to recover for that part of the crop damaged within the right of way across the 102-acre tract. The proportion of the award for damages to the 69.2 acres out of the 102-acre tract attributable to the crop growing in the right of way is $223.55 (1.6 acres × 42.34 bushels × $3.30 per bushel) and the award will be reduced by that amount.
Third Party Demand and Reconventional Demand
Since no damages are being awarded for damage to crops within the limits of the *355 right of way, the clause in the construction contract which obligates Louisiana Power & Light to pay such damages, provided the contractor uses reasonable care to avoid excessive damages, is not applicable.
The construction contract provides that the contractor (Irby) agrees to fully indemnify and save harmless the owner (Louisiana Power & Light) from and against any and all claims and actions, and all expenses and attorney fees incidental to the defense of any such claims or actions, and to pay any judgment or damages to any property resulting from or arising out of the work performed under the contract. The contract also provides that any damages, other than damage to crops within the right of way, resulting from the performance of the work either off or on the right of way shall be the contractor's responsibility.
Irby contractually agreed to assume responsibility for and to pay for off right of way damages such as were incurred here. Regardless of whether Louisiana Power & Light might have also been liable to the plaintiff, Irby has contractually barred itself from recovering over against Louisiana Power & Light either for indemnity or contribution.
Irby argues that Louisiana Power & Light failed to furnish the right of way necessary for construction of the line in accordance with its express obligation under the contract, and that the hold harmless provisions are applicable only to damages resulting from any activity conducted by Irby off the right of way, which it did not do.
Louisiana Power & Light had a right of way across the subject property with fairly standard provisions and complied with its obligation to furnish the right of way. The hold harmless provisions cannot be construed in the manner suggested by Irby; to the contrary those provisions clearly establish that as between Irby and Louisiana Power & Light, Irby is to be responsible for off right of way damages occasioned by its work, whether the work was done on or off the right of way.
Accordingly, the judgment in favor of Irby against Louisiana Power & Light on the third-party demand must be reversed and set aside.
Considering Louisiana Power & Light's reconventional demand, the provisions for expenses and attorney fees literally apply only to the defense of claims made against Louisiana Power & Light. Plaintiff made no claim against Louisiana Power & Light and Louisiana Power & Light was not required to incur expenses or attorney fees in defense of any such claim. Although Irby is not granted recovery on its thirdparty demand against Louisiana Power & Light on appeal because the award to plaintiff for crop damages within the right of way is set aside, Irby's third-party demand against Louisiana Power & Light to the extent of any such damages was justified and well grounded. Therefore, Louisiana Power & Light should not be entitled to recover attorney fees for defense of the third-party demand and its reconventional demand was correctly rejected.

Decree
For the reasons assigned, the amount of the judgment in favor of plaintiff against Irby Construction Company and Liberty Mutual Insurance Company is reduced from $15,913.02 to $13,686.41, and as amended is affirmed.
The judgment on the third-party demand in favor of Irby Construction Company and Liberty Mutual Insurance Company against Louisiana Power & Light Company is reversed and set aside and the third-party demand is rejected.
The judgment denying Louisiana Power & Light Company's reconventional demand against Irby Construction Company and Liberty Mutual Insurance Company is affirmed.
Costs of these proceedings, including the costs of appeal, are assessed to defendants Irby Construction Company and Liberty Mutual Insurance Company.
NOTES
[1] LSA-R.S. 9:5624:

"When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained."