481 So.2d 125 (1986)
Minos BROUSSARD
v.
NORTHCOTT EXPLORATION COMPANY, INC.
No. 85-C-1179.
Supreme Court of Louisiana.
January 13, 1986.
Rehearing Denied February 20, 1986.
*126 Roger C. Sellers, Thompson & Sellers, Abbeville, for applicant.
Charles Sonnier, Sonnier & Hebert, Abbeville, for respondent.
BLANCHE, Justice.
Minos Broussard entered into a verbal predial farming lease with Euphemine S. Trahan and other landowners of a certain parcel of property in 1974. Broussard agreed to pay Trahan and the other landowners a one-fifth share of the soybean crop derived from the tract of land located in Vermillion Parish as consideration. Since the term of the lease was not stipulated, it was for the presumed period of one year as provided in LSA-C.C. art. 2687 (West 1985). In 1976 Northcott Exploration Co., Inc. entered into a mineral lease with the landowners which was subsequently recorded. Northcott began drilling operations in the Summer of 1977, a few months after Broussard had planted his crop for that year. As a result of Northcott's drilling operations, approximately 3.4 acres of the growing crops were destroyed. Broussard's need to provide turnrows further reduced the acreage available for cultivation. *127 Northcott also destroyed approximately 700 feet by 10 to 15 feet of soybeans when the need developed to run a flow line across the property. Broussard instituted this suit to recover the full value of his soybean crop destroyed by drilling operations in 1977. He also seeks to recover lost profits for the years 1978 and 1979 caused by his inability to cultivate the area where Northcott was conducting operations.
The trial court rendered judgment in favor of the plaintiff in the amount of $1,638.33. It concluded that the damage provision of the mineral lease created a stipulation pour autrui in favor of the plaintiff. The court of appeal reversed that finding. It also concluded that a lessee under a verbal, unrecorded lease cannot recover damages against one exercising his rights under a recorded mineral lease. Broussard v. Northcott Exploration Co., Inc., 469 So.2d 392 (La.App. 3rd Cir.1985).
Two issues are presented by this case for consideration:
1. Does the Damage Clause of the mineral lease create a stipulation pour autrui in favor of Minos Broussard?
2. Does the lessee of a predial estate who fails to record his lease have a cause of action under Civil Code art. 2315?

Stipulation Pour Autrui?
Mr. Broussard argues that the Damage Clause of the mineral lease contains a stipulation pour autrui enabling him to recover. The clause states that:
"The Lessee shall be responsible for all surface damages of the Lessor (emphasis added) caused by the Lessee's operations."
A stipulation pour autrui exists when some advantage to a third person is created as a condition or consideration of a communtative contract. LSA-C.C. art. 1890 (West 1973) [Current version at LSA-CC 1978 (West 1985)]. In order to determine if a stipulation exists, we must look to the intention of the parties at the time the mineral lease was negotiated. This can best be accomplished by comparing the standard damage clause found in the original version of the mineral lease to the modified version agreed to by the parties. The unmodified version of the Damage Clause read as follows:
"The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations."
In negotiating the mineral lease the parties modified the phrase "for all damages to timber and growing crops" to read "for all surface damages." However, they did not modify the mineral lease to expand Northcott's liability beyond the "damages of the lessor." For this reason, we can easily distinguish Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969), and Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La.1974).
In Andrepont, supra, the standard clause set forth above was modified by deleting the phrase "to timber and growing crops of Lessor." The resulting clause read: "The Lessee shall be responsible for all damages (emphasis added) caused by Lessee's operations." It did not restrict liability to the damages suffered by "the Lessor." The crop loss suffered by the farmer in Andrepont, supra, was clearly included within the "all damages" language allowing him to recover under the mineral lease. In Hargroder, supra, it was specified in the agreement that the defendant would pay for damages "which may arise to growing crops." In both cases the intent to pay for crop damage was beyond question.
For the reasons set forth above, the Court of Appeal was correct when it concluded that the mineral lease did not create a stipulation pour autrui in favor of Minos Broussard.

Recovery in Tort?
Plaintiff also asserts that the defendant is liable under LSA-C.C. 2315 (West 1985) for the full value of the crop which was destroyed when the well was erected in *128 1977, and for the loss of profits in 1978 and 1979 caused by the presence of Northcott's operations. He argues that the Public Records Doctrine was not intended to protect tortfeasors from liability. While we agree with that position, we do not agree that Northcott is a tortfeasor merely because he exercised his rights under the recorded mineral lease.[1]
While growing crops belong to the landowner, they are a component part of the tract of land. LSA-C.C. 465 (West 1985). Component parts of a tract of land are immovable property. LSA-C.C. 462 (West 1985). However, when the standing crops belong to a person other than the landowner, they become movables by anticipation. LSA-C.C. art. 474 (West 1985), and LSA-C.C. art. 491 (West 1985). As between Mr. Broussard and the landowners, the crops in question were movables by anticipation which were owned by Mr. Broussard. As to third persons such as Northcott, the crops remained immovable property owned by the landowner in the absence of any other recorded interest shown on the public records. The crops are "presumed to belong to the owner of the ground unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish where the immovable is located." LSA-C.C. art. 491 (West 1985). The fact that Northcott had actual knowledge that the crops belonged to Mr. Broussard is irrelevant. Comment (e) to LSA-C.C. art. 491 indicates that the presumption created by that article is conclusive since it can be defeated only by an instrument filed for registry. Furthermore, it has been held on numerous occasions that actual knowledge of separate ownership does not displace the operation of the Public Records Doctrine. LSA-R.S. 9:2771; Minter v. Union Cent. Life Ins. Co., 180 La. 38, 156 So. 167 (1934); and Meares v. Pioneer Prod. Corp., 382 So.2d 1009 (La.App. 3rd Cir.), writ denied 392 So.2d 667 (La.1980).
Since Northcott recorded its mineral lease, Minos Broussard's predial lease became subject to the superior rights acquired by Northcott. Among these rights is the right of Northcott to conduct drilling operations on the property. However, Northcott must exercise this right subject to the limitations discussed below.
Article 2315 provides in part: "every act whatever of an that causes damage to another obliges him by whose fault it happened to repair it." Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case. It encompasses the exercise of contractual rights in such a manner as to cause unreasonable property damage. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); and Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). As stated by this court long ago, "every business, however lawful, must be conducted with due regard for the rights of others ..." Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947).
When Northcott exercised its rights under the mineral lease, it had an obligation to act reasonably. In conducting those operations it was entitled to destroy only so much of Mr. Broussard's crop as was required to allow it to reasonably exercise its' contractual right. Mr. Broussard cannot recover from Northcott, although he may against his landlord under LSA-R.S. 9:3203, for that portion of the crop destroyed by Northcott's reasonable exercise of its right. This is because Mr. Broussard rented the property subject to the rights granted to Northcott once the mineral lease was recorded. Northcott was entitled to rely on the absence of any recorded interests when drilling was commenced. This position was recently adopted by our brothers below in Oswalt v. *129 Irby Cot. Co., 424 So.2d 348 (La.App. 2nd Cir.1982):
As to the property within the limits of the right of way, plaintiff's lease was taken subject to the prior recorded right of way granted under the public records doctrine ... In the absence of negligence on the part of the grantee of the servitude or an unreasonable exercise of the grantee's rights, the plaintiff lessee is not entitled to recover from the grantee or its contractor for damages to his crop growing within the right of way caused by the operation of the grantee conducted pursuant to the rights granted in the right of way instrument..."
That which constitutes an "unreasonable exercise of contractual rights" must be determined on a case by case basis. One example of this may arise when ten acres of crops are destroyed when the destruction of only two acres would have been reasonable. This case is hereby remanded to the trial court to determine whether Northcott acted reasonably in conducting its operations.
It was suggested at oral argument that the destruction of Mr. Broussard's tractor while sitting on the drill site would be analogous to the destruction of his growing crops. We disagree. Unlike standing crops, a tractor is always movable property and is never subject to the Public Records Doctrine, as it relates to immovables. While the mineral lease grants to the lessee the right to exercise dominion and control over immovable property in conducting drilling operations, it does not grant such rights over movable property sitting on the tract of land. Furthermore, it would clearly be unreasonable to destroy a tractor that could simply be moved.
We acknowledge that the operation of the Public Records Doctrine places the farmer in a difficult position. In order to recover the losses resulting from the reasonable exercise of rights under the mineral lease, the farmer must institute suit against the landowner under LSA-R.S. 9:3203. This may jeopardize his rental of the property in the future. As a consequence, he may never recover deciding not to sue the landowner in order to avoid placing his year-to-year lease at risk. Despite the dilemma occasioned thereby to the farmer, we are not in a position to create an exception to the legislatively created Public Records Doctrine. That is a legislative function.

Measure of Damages?
If it is determined that Northcott unreasonably exercised its right on remand, Minos Broussard can recover the fair market value of those growing crops unreasonably destroyed. However, he cannot recover for the loss of future profits resulting from his inability to cultivate the land in 1978 and 1979. Minos Broussard had a year to year lease that was subject to cancellation at any time. This causes the alleged loss of future profits to be merely conjectural. See Southern Television Electronics v. Read, 244 So.2d 624 (La. App. 4th Cir.1971).
For the above reasons, this case is hereby remanded to the trial court for proceedings consistent with the law as stated herein.
REMANDED.
WATSON, J., concurs and assigns reasons.
CALOGERO and DENNIS, JJ., dissent.
LEMMON, J., dissents and assigns reasons.
WATSON, Justice, concurring.
I concur in the result. The majority correctly found that Minos Broussard cannot recover for the loss of future profits resulting from his inability to cultivate the land in 1978 and 1979. In my opinion, the majority does not mean to cast any doubt on the right of the landowner to recover surface damages.
Under prior jurisprudence, Northcott's obligation to conduct lawful business operations with due regard for the rights of *130 others[1] and to minimize the burden of its charge on the land[2] is to the landowner, not to a tenant under an unrecorded lease.
The majority cites Oswalt[3] with approval in expanding this obligation from landowner/landowner and servitude holder/landowner relationships to those between servitude holders and tenants under unrecorded leases. In my opinion, however, the majority improvidently adopted Oswalt's "reasonable destruction" exception to LSA-C.C. art. 2315. Under that rationale, it might be said that Northcott reasonably destroyed property of an unrecorded tenant. The conclusion that this in some way abrogates LSA-C.C. art. 2315's mandate that Northcott repair its every act which by its fault causes damage to another is troubling to those of us who believe in true civilian principles.
Therefore, I respectfully concur.
LEMMON, Justice, dissenting.
Plaintiff is entitled recovery in tort from defendant mineral lessee for damages to the standing crops.[1]
The majority reasons that the mineral lessee was not a tortfeasor, essentially because the lessor contractually gave his consent to use the land for drilling operations and the destruction of some crops was reasonably necessary to conduct the drilling operations. Perhaps such an interpretation would be reasonable if the mineral lease was silent as to surface damages. However, this contract specifically provided that the mineral lessee had to make reparation for "all surface damages of the Lessor". Under this provision, the mineral lessee fully expected to pay for all crops that it destroyed in its drilling operations, and that lessee cannot not say that it had permission to destroy any crops on the lessor's premises. The mineral lessee therefore committed a tort when it destroyed the crops, whether or not the destruction was reasonably incidental to the drilling operations.
The question of which party is entitled to recovery for the crop damages caused by the mineral lessee's tort is a matter between plaintiff and his lessor, the parties to the farming lease, and the law of registry does not apply as between these parties. Inasmuch as plaintiff had a real interest in the standing crops on the lessor's premises, he had a right of action against the tortfeasor to recover the tort-caused damages.[2]
NOTES
[1] This merely reaffirms the unanimous opinion of this Court in Andrepont v. Acadia Drilling Co., Inc., supra.
[1] Hero Land Co. v. Texaco, Inc., 310 So.2d 93 (La., 1975); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947). Each involved damage or nuisance to a landowner by an adjoining landowner or his grantee of a contractual right.
[2] Board of Commissioners of the Port of New Orleans v. Illinois Central Gulf Railroad Co., 379 So.2d 838 (La.App. 4th Cir.1980), writ den. 380 So.2d 1210 (La., 1980). The servitude holder (railroad) was liable for damage to the landowner's sewerage line.
[3] Oswalt v. Irby Const. Co., 424 So.2d 348 (La. App.2d Cir.1982). Recovery was denied to the tenant farmer upon a finding that the destruction of growing crops inside the right of way by heavy equipment traversing a power line right of way was a reasonable and necessary exercise of that contractor's rights.
[1] Plaintiff's future losses arise out of loss of his right to plant future crops. That is the loss of a contractual right caused by the lessor's failure to maintain him in peaceable possession and not by any tort of the mineral lessee. Plaintiff's recourse is solely against his lessor.
[2] This right of action was shared with the lessor who was entitled under the farming lease to a share of the crop.