496 So.2d 1334 (1986)
David E. ASHBY, et al., Plaintiffs-Appellants,
v.
IMC EXPLORATION COMPANY, Defendant-Appellee.
No. 85-1123.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Writ Granted January 23, 1987.
*1335 Edwards, Stefanski and Barousse, Homer Ed Barousse, Jr., Crowley, for plaintiffs-appellants.
James L. Daniels of Hollier and Rinquet, Lafayette, for defendant-appellee.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
David E. Ashby and Cecil W. Faulk (appellants) appeal the dismissal of their suit against IMC Exploration Company (IMC) for cancellation of an oil, gas and mineral lease, and compensation for property damages. After trial on the merits, the trial court dismissed appellants' action for lease cancellation on the grounds that they had no mineral interest in the land and found no damages because IMC's operations on the leased land were free of negligence and performed in the necessary course of drilling. Appellants contend that the trial court erred in: (1) limiting recovery for surface damages to those items specified in the mineral lease; and (2) allowing IMC to be enriched at the expense of appellants. We affirm.

FACTS
On March 21, 1958, J.E. Adcock granted Charles B. Wrightsman an oil, gas and mineral lease covering 89.9 acres in Acadia Parish. The lease contains a provision prohibiting drilling operations within 300 feet of the main dwelling or deep water well. Subsequently Wrightsman assigned his interest in the lease to IMC. On June 29, 1975, Chester J. Adcock, an heir of J.E. Adcock, conveyed his undivided interest in the property, without reservation of his mineral interest, to David E. Ashby. On *1336 May 25, 1979, Chester Adcock executed a second sale to David E. Ashby conveying a specific 17.98 acres of the tract; in this instrument Adcock reserved all the mineral rights in the property. Later in 1980 Chester Adcock inter alios executed an act of exchange regarding the original 89.9 acre tract; David Ashby intervened in the exchange so that the various persons exchanging property could ratify his 1979 purchase from Chester Adcock. Thereafter David Ashby sold six acres of his property to Cecil W. Faulk.
On June 20, 1981, IMC spudded the J.E. Adcock No. 1 Well on Ashby's property. However, drilling operations took place on Ashby's and Faulk's land. The well was completed as a producer on November 2, 1981. The drilling rig was then moved off the premises, and clean up operations ended on December 21, 1981.

LEASE CANCELLATION/ENFORCEMENT OF LEASE PROVISIONS
In the trial court the appellants sought the cancellation of IMC's lease on the ground that IMC conducted a portion of its drilling operation within 300 feet of a rent house on the property. Appellants now argue that the provision in the 1958 lease between Adcock and Wrightsman, IMC's assignor, was inserted to prohibit drilling operations on the prime portion of the lease tract.
The 1958 mineral lease provides in pertinent part:
"No operations for drilling shall be conducted within 300 feet from the main dwelling or from Deep Water well on Lessor's property without the written consent of the Lessor."
In seeking lease cancellation before the trial court, appellants claimed they acquired a mineral interest when Adcock sold his surface interest in the 89.9 acre tract in 1975 without reserving his mineral interest. The trial court ruled otherwise on this issue, finding the 1979 deed between Adcock and Ashby a correction deed; accordingly, the latter deed's inclusion of a mineral reservation in Adcock's favor deprived appellants of any mineral interest in the property. Therefore the trial court concluded appellants had no right of action to seek cancellation of IMC's mineral lease.
On appeal appellants have not assigned as error the trial court's action maintaining IMC's exception of no right of action. Therefore we are bound by the trial court's judgment, finding that appellants have no mineral interest in the leased tract.
Nevertheless, appellants who were not parties to the original lease and who have neither acquired rights through assignment of the 1958 lease, nor purchased the mineral interest in the property, now seek to enforce the 300 foot drilling restriction incorporated in the original lease.
A mineral lease is the contract between the parties. Odom v. Union Producing Company, 243 La. 48, 141 So.2d 649 (1962). Appellants' brief cites no authority which would allow them to take advantage of this lease provision. There is nothing in the restriction or in the lease which would permit us to consider it as a stipulation pour autrui, therefore, appellants are precluded from raising this issue on appeal.

DAMAGES
Appellants contend that the trial court erred in not awarding them damages for the diminished use of their property.
They argue that the trial court's reasoning is inconsistent because it prohibited them from enforcing the 300 foot restriction, but nonetheless limited their right to recover damages only for growing crops or timber as provided in the lease. We disagree. There is no inconsistency in the trial court's reasoning. It is clear that the trial court analyzed appellants' damage claim first in terms of any negligence on IMC's part in its drilling operations, and then as to whether appellants were entitled to damages under the lease provisions, i.e., timber and growing crops, through the possible *1337 existence of a stipulation pour autrui.
A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals, and reducing them to possession and ownership. LSA-R.S. 31:21. The owner of the land burdened by a mineral right and the owner of a mineral right must exercise their correlative rights with reasonable regard for those of the other. LSA-R.S. 31:11. A mineral lessee is obliged to reasonably exercise its rights under the mineral lease, and is liable ex delicto for damages caused by a breach of that duty. Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125 (La.1986). That which constitutes an unreasonable exercise of contractual rights must be determined on a case by case basis. Broussard, supra.
In its denial of appellants' damage claim the trial court relied on Rohner v. Austral Oil Exploration Company, Inc., 104 So.2d 253 (La.App. 1st Cir.1958), for the proposition that unless stipulated in the mineral lease, the mineral lessee is not responsible for damages inflicted without negligence upon leased land in the course of necessary drilling operations. Although, for reasons hereafter stated, we agree with the result of the trial court, we hold that its requirement that negligence is a necessary precedent for recovery is incongruous with R.S. 31:11. Rather judicial inquiry should focus on whether the mineral lessee's use of the land was reasonable; negligence per se is not a necessary predicate to recovery. See Broussard, supra, and cases cited therein, and official comments to R.S. 31:11.
The recorded lease in the case sub judice granted the mineral lessee "the exclusive right to enter upon and use the land... for the exploration for, and production of oil, gas, sulphur and all other minerals, together with the use of the surface of the land for all purposes incident to the exploration for and production, ownership, possession and transportation of said minerals... including the right to construct, maintain and use roads and/or canals thereon...."
Appellants do not seek damages for loss of timber or crops; neither do they claim that any home or water well on the leased premises was damaged by the drilling operations nor that IMC used more land than was reasonably necessary to drill its well. The record clearly establishes that IMC conducted its operations in a reasonable and prudent manner, and restored that portion of the leased property not used in the production operation of the well to its original condition.
Appellants claim that because of IMC's drilling operations they are unable to fully develop the use of their land; in particular they claim that they are unable to use their land for the establishment of either a subdivision or trailer lots for residential purposes. Their argument in brief that the 300 foot restriction on drilling operations was incorporated in the original lease to prohibit drilling on the prime part of the property is pure conjecture, and not supported by the record. Under the public records doctrine appellants acquired the property subject to IMC's prior recorded mineral lease. The grantee of a mineral servitude, in the absence of negligence on its part or an unreasonable exercise of its contractual rights, has the right to conduct its operations in accordance with the mineral lease. See Oswalt v. Irby Const. Co., 424 So.2d 348 (La.App. 2nd Cir.1982). Accordingly, the appellants, who took ownership of the surface rights of the property subject to the previously recorded mineral lease, have no right to recover damages for the diminished use of the land, arising out of IMC's reasonable, necessary exercise of its rights under the mineral lease.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.