506 So.2d 1193 (1987)
David E. ASHBY, et al.
v.
IMC EXPLORATION COMPANY.
No. 86-C-2384.
Supreme Court of Louisiana.
May 18, 1987.
*1194 Homer Barousse, Jr., James Cunningham, Crowley, for applicant.
James Daniels, Lafayette, for respondent.
MARCUS, Justice.[*]
This is a suit by surface owners David E. and Walterine Faulk Ashby (Ashby) and Cecil W. and Joyce B. Faulk (Faulk) for lease cancellation and damages against IMC Exploration Company (IMC), the mineral lessee.
The facts are generally not in dispute. In 1958, J.E. Adcock granted an oil, gas and mineral lease covering a parent tract of 89.9 acres, more or less, in which he owned the surface and all mineral rights. The lease in due course was assigned to IMC. At the time Adcock granted the lease, his family home was located on the leased premises. A water well serving the dwelling was located near the home site.
In pertinent part, the lease provides that:
Lessor, in consideration of Six Thousand Seven Hundred Forty Two and 50/100 ($6,742.50) [Dollars], hereby leases and lets unto Lessee the exclusive right to enter upon and use the land hereinafter described for the exploration for, and production of oil, gas, sulphur and all other minerals, together with the use of the surface of the land for all purposes incident to the exploration for and production, ownership, possession and transportation of said minerals (either from said land or acreage pooled therewith) and the right of ingress and egress to and from said lands at all times for such purposes....
....
[300-Foot Clause]
No operations for drilling shall be conducted within 300 feet from the main dwelling or from Deep Water well on Lessors property without the written consent of the Lessor.
....
[Damages Clause]
The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations.
[Bracketed subtitles added.]
Adcock died in 1970. Thereafter, the house was moved off the land by his heirs and the water well was abandoned. In 1979, one of the Adcock heirs executed a sale to Ashby of a 17.98-acre portion of the 89.9-acre parent tract described in the lease, reserving all mineral rights.[1] Thereafter, Ashby sold six acres of his property to Faulk. On June 20, 1981, IMC spudded the J.E. Adcock No. 1 Well on Ashby's property. However, drilling operations *1195 took place on Ashby's and Faulk's land. The well was completed as a producer on November 2, 1981. The drilling rig was then moved off the premises, and cleanup operations ended on December 21, 1981.
Ashby and Faulk seek cancellation of the mineral lease and recovery of damages against IMC on the ground that although the well was drilled beyond 300 feet from a rent house on Ashby's property, IMC conducted some of its drilling operations within 300 feet of the house in violation of the 300-Foot Clause of the lease. The rent house is presently situated on the same site as the Adcock main dwelling.
The trial court sustained IMC's exception of no right of action for cancellation of the lease and denied the claim for damages. The court of appeal affirmed. The court held that plaintiffs had no right of action against IMC for cancellation of the lease finding no stipulation pour autrui in their favor in the mineral lease. The court also denied the claim for damages.[2] On the plaintiffs' application, we granted certiorari to review the correctness of that decision.[3]
Plaintiffs, as surface owners of the subject property with no ownership interest in the minerals, claim to have a right of action against IMC for cancellation of the mineral lease and damages on the ground of IMC's violation of the mineral lease contract between Adcock, plaintiffs' ancestor in title, and IMC, the assignee of all mineral lease rights and obligations.[4] The issues presented for our review are whether plaintiffs, as surface owners, have a right of action against IMC, a mineral lessee of the subject property, and if so, whether plaintiffs have proved that they are entitled to cancellation of the lease and/or damages.
A mineral lease, as a mineral right, is an incorporeal immovable. See La.R.S. 31:16, 18; La.Civ.Code art. 470. As such, a mineral lease creates real rights which are subject to the laws of registry. La.R.S. 31:16, 18. Surface ownership of land as a corporeal immovable is likewise affected by the laws of registry.
La.R.S. 9:2721 provides:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
Plaintiffs acquired their surface ownership subject to the previously recorded mineral lease. Because their surface ownership deeds are duly recorded, plaintiffs, as record owners of rights in the land, may assert those rights against IMC, a third party mineral lessee pursuant to a recorded mineral lease burdening the subject property.[5] Likewise, they may rely on the public records in delineating their rights vis-a-vis the rights of the mineral lessee. Accordingly, *1196 plaintiffs may assert any rights they possess pursuant to their deeds, subject, of course, to the previously recorded mineral lease in favor of IMC.
Whether plaintiffs have a right of action[6] depends upon whether, at the time the lease was executed, the 300-Foot Clause was made solely for the benefit of the lessor (Adcock) or was intended for the benefit of subsequent surface owners. The 300-Foot Clause provides:
No operations for drilling shall be conducted within 300 feet from the main dwelling or from Deep Water well on Lessors property without the written consent of the Lessor.
The clause refers to the main dwelling or deep water well on the lessor's property. This reference to a particular house and not a site indicates the contracting parties' intent to restrict the limitation on drilling operations to within 300 feet of Adcock's family residence. The additional requirement of written consent of the lessor in order to vary this limitation further evidences the intent of a personal obligation in favor of the lessor. In this case, as mere surface owners, plaintiffs are not mineral lessors as they have no ownership interest in the property's minerals. Moreover, had the parties intended the 300-Foot Clause to benefit future surface owners, they could have restricted drilling operations to within 300 feet of a particular site on the property or clearly stipulated that the benefit of this restriction should inure to future surface owners. Because the language of the 300-Foot Clause applies only to "Lessors property" and "Lessor," we conclude that no benefit was intended in favor of plaintiffs as the parties to the lease intended the 300-Foot Clause for the sole benefit of the lessor (Adcock). Hence, plaintiffs have no right of action against IMC.[7] Having found that plaintiffs have no right of action, we do not reach the issues of cancellation of the lease and damages. Accordingly, for reasons other than those of the court of appeal, we concur in the result denying plaintiffs' claims for cancellation of the lease and damages.

DECREE
For the reasons assigned, the decision of the court of appeal is affirmed.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The lessee's contractual obligation not to conduct drilling operations within 300 feet of the main dwelling, at any time during the entire existence of the lease, was an obligation which was clearly intended to "run with the land" and to inure to the benefit of future surface owners. Had plaintiff purchased the land (without minerals) from Adcock on the day after the execution of the mineral lease and moved into the house, certainly plaintiff would have been allowed to enforce the prohibition against drilling within 300 feet of the house. The obvious intention of the parties to the mineral lease was to make the location of the house the center point of the circular area of prohibited activity during the existence of the lease.
The lessee breached this contractual obligation and is liable for damages. The damages should be assessed on the basis of the cost of restoring the area to a condition suitable for the lessor's use and the value *1197 of the lessor's loss of use of the land from the time of the drilling operations until the time of restoration.[1] Moreover, irrespective of any lease provision such as the 300-foot clause in this lease, a mineral lessee is responsible to restore the surface of the landowner's property as nearly as possible to its original condition or, upon failure to do so, to pay the reasonable cost thereof. La.R.S. 31:122, comment on restoration of surface.
NOTES
[*] Richard B. Williams, associate justice ad hoc, sitting for Associate Justice Jack Crozier Watson, recused.
[1] Ashby's surface rights in the 17.98-acre tract were recognized by the other Adcock heirs by an Act of Exchange executed in June 1980.
[2] 496 So.2d 1334 (La.App. 3d Cir.1986).
[3] 500 So.2d 413 (La.1987).
[4] Plaintiffs do not assert a claim in tort against IMC on the ground of negligent or unreasonable exercise of its contractual rights, nor do they assign as error the trial court finding (affirmed by the court of appeal) that IMC's use of the land was reasonable. Hence, we will not address this issue.
[5] Evidence of recordation of the 1958 mineral lease and the act of sale to Cecil W. and Joyce B. Faulk is not in the record. Although the recordation stamp is discernible on the copy of the lease, the specific date and place of recordation cannot be read due to the poor copy quality of the document. However, the court of appeal opinion spoke in terms of IMC's prior recorded mineral lease. Moreover, in brief to this court, plaintiffs assert that no substantial errors of fact were made by the court of appeal. No evidence of recordation is on the copy of the Faulk deed.

Under the circumstances, we have assumed that these instruments have been duly recorded and that the 1958 lease was recorded prior to either of plaintiffs' deeds. Even lacking the recordation of the Faulk deed, the result in this case would be the same in view of our finding regarding a stipulation pour autrui. Obviously if the 1958 lease were not recorded prior to the recordation of plaintiffs' deeds, plaintiffs would not have to rely on a stipulation pour autrui in the mineral lease in order to maintain an action against IMC.
[6] In Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La. 1974), the court defined right of action as "... his interest in the subject matter of the proceeding...." It further referred to a right of action as an interest to be vindicated in the suit.
[7] Even viewing the clause as a possible stipulation pour autrui (stipulation for benefit of a third party), the result would be the same. Broussard v. Northcott Exploration Company, Inc., 481 So.2d 125 (La.1986); Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874 (La. 1974); Andrepont v. Acadia Drilling Co., Inc., 255 La. 347, 231 So.2d 347 (1969). The test annunciated in Broussard states that "[i]n order to determine if a stipulation [pour autrui] exists, we must look to the intention of the parties at the time the mineral lease was negotiated." Since the foregoing analysis indicates no such intention to benefit future surface owners, there was no stipulation pour autrui in favor of plaintiffs in this case.
[1] In his application for certiorari, plaintiff represented that there were more than five acres of slush pits located seventy feet from the house. These pits apparently prevented plaintiff from using the acreage for a barn, a garden or any other use.

Counsel for defendants asserted in oral argument that the entire area within the 300-foot radius had been restored (although he admitted there was still some soil contamination beyond that area) and suggested that any damages should be limited to the fair rental value of the particular acreage for six months. Although the damages in this case may be fairly insignificant, the legal effect of this decision on landowners may not be.