507 So.2d 11 (1987)
Charles Don EDWARDS, Plaintiff-Appellee,
v.
JEEMS BAYOU PRODUCTION COMPANY, Defendant-Appellant.
No. 18691-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
*12 Plummer, Means & Burgess by Robert E. Plummer, Mansfield, for defendant-appellant.
Jack R. Gamble, Jr., Mansfield, for plaintiff-appellee.
Before HALL, SEXTON and NORRIS, JJ.
HALL, Chief Judge.
This is a suit for surface damages brought by a landowner against a mineral lessee who drilled a gas well, presently shut-in, on plaintiff's property. The trial judge awarded a total of $4,375.00 ($1,200.00 for loss of hay, $35.00 for repair to fence, $140.00 for loss of oak tree, and $3,000.00 for damage to land). Defendant appealed. We amend and affirm.
The owner of land burdened by a mineral right and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. LSA-R.S. 31:11. A mineral lessee is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator. LSA-R.S. 31:122. The owner of a mineral servitude is entitled to use only so much of the land as is reasonably necessary to conduct his operations. He is obligated, *13 insofar as practicable, to restore the surface to its original condition at the earliest reasonable time. LSA-R.S. 31:22. A mineral lessee has the same obligation. A mineral lessee has the obligation to maintain or restore the leased premises as near as is practical to its original condition, subject to the lessee's rightful use thereof, and where the lessee has damaged the land it is his duty to appropriately remedy the condition brought on by his use of the lease. Smith v. Schuster, 66 So.2d 430 (La.App. 2d Cir.1953); Broussard v. Waterbury, 346 So.2d 1342 (La.App. 3d Cir.1977), writ denied, 350 So.2d 674 (La.1977); LSA-C.C. Art. 2719, 2720. See comment following LSA-R.S. 31:122.
Fault under LSA-C.C. Art. 2315 encompasses the exercise of contractual rights in such a manner as to cause unreasonable property damage. When a mineral lessee exercises its rights under a mineral lease, it has an obligation to act reasonably. That which constitutes an unreasonable exercise of contractual rights must be determined on a case by case basis. Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125 (La.1986).
In determining a lessee's liability for damages, judicial inquiry should focus on whether the mineral lessee's use of the land was reasonable; negligence per se is not a necessary predicate to recovery by the landowner. A mineral lessee has the right to conduct its operation in accordance with the mineral lease and the landowner has no right to recover damages for diminished use of his land arising out of reasonable and necessary exercise of the lessee's rights under the mineral lease. Ashby v. IMC Exploration Company, 496 So.2d 1334 (La.App. 3d Cir.1986), writ granted 500 So.2d 413 (La.1987). See and compare Rohner v. Austral Oil Exploration Company, 104 So.2d 253 (La.App. 1st Cir.1958).
In the present case, the standard form lease used contains the usual provisions granting the lessee the right to use the leased premises for drilling and production operations and contains no provision relative to surface damages.
There was substantial conflict in the evidence as to the extent of the damages to the land. The plaintiff landowner testified that the drill site occupied about four acres which were left in such a rough condition that a bush hog or tractor could not be operated in that area. Cables were left in the ground and the pits were not properly filled. Loss of the drill site and the area occupied by an iron ore road leading to the well left the twelve acre hay meadow too small for cultivation. Plaintiff had been cutting about $1,200.00 worth of hay from the meadow each year. A contractor testified it would cost $7,000.00 to level and add topsoil to restore a 40,000 square foot area which needed restoring. A land appraiser testified the land was worth $3,000.00 per acre at the time the well was drilled but did not testify as to any diminution in value due to the drilling of the well.
The well had been shut-in for about two and one-half years at the time of trial for lack of a gas purchaser. At such time as the well is put on production, a site will be needed for production equipment and possibly a workover rig. The dead man cables left at the site will be needed at that time. Most of the witnesses indicated that the entire drill site occupied one and one-half to two acres.
It would not be reasonable or practical at this time to restore for agricultural purposes that part of the drill site reasonably needed for continued operation and anticipated production of the shut-in gas well. The contractor's estimate was for restoring about one acre immediately surrounding the well, most of which will be needed when production commences. However, the evidence supports the trial court's finding that the defendant did a poor job in the restoration efforts it undertook and that the area is unsuitable for agricultural purposes. Although difficult to estimate on the basis of the evidence, the sum of $2,000.00 should be sufficient to cover the cost of restoring that part of the drill site not needed in the lessee's ongoing operations.
The lessee has the right to use the site reasonably necessary to conduct its *14 operations and to build and maintain an iron ore road to the site. The landowner is not entitled to recover for his loss of use of the site or road area for agricultural purposes. The testimony does not indicate that any growing hay crop was destroyed. The award for loss of hay the landowner might have grown in the future on the entire twelve acre hay meadow is not justified.
There was evidence that dirt was piled around a large shade tree causing it to die. This action could be said to be unnecessary and unreasonable; therefore, the award for the loss of the tree will be affirmed. The nominal award for damage to the fence which has not been repaired will also be affirmed.
Accordingly, the judgment of the district court in favor of the plaintiff against the defendant is reduced from $4,375.00 to $2,175.00 and, as amended, is affirmed. Costs of the appeal are assessed to the defendant-appellant.
AMENDED AND AFFIRMED.