561 So.2d 732 (1990)
MAGNOLIA COAL TERMINAL
v.
PHILLIPS OIL COMPANY.
No. 88-CA-0642.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1990.
Rehearing Denied June 19, 1990.
*733 James J. Coleman, Sr., Henry Lazarus, Charles B. Johnson, Peggy Wallace, Coleman, Dutrey & Thomson, New Orleans, and Allan Kanner, Allan Kanner and Associates, Philadelphia, Pa., for plaintiff-appellee/appellant, Magnolia Coal Terminal.
William G. Paul, John F. Williford, Phillips Petroleum Co., Bartlesville, Okl., Kenneth E. Rogers, David M. Whitney, Phillips Petroleum Co., Houston, Tex., and Charles D. Marshall, Jr., David N. Schell, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for defendant-appellant, Phillips Petroleum Co.
Chevron, U.S.A. Inc., Douglas A. Molony, CNG Producing Co., Malcolm Johns, Louisiana Land & Exploration Co., Frederick J. Plaeger, III, New Orleans, Sonat Exploration Co., Philip C. Wrangle, Houston, Tex., Texaco Inc., Shirley C. Friend, John D. Fitzmorris, Jr., Liskow & Lewis, J. Berry St. John, Jr., William Craig Wyman, New Orleans, Liskow & Lewis, Robert T. Jorden, Charles B. Griffis, Lafayette, and George C. Gibson, New Orleans, amicus curiae.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
SCHOTT, Chief Judge.
This suit, filed in September, 1985, arises out of an oil well blowout which occurred on September 29, 1964. Plaintiff, Magnolia Coal Terminal, acquired the property, exclusive of mineral rights, on December 23, 1981. Plaintiff subsequently became convinced that the well was leaking despite attempts to plug the well by the successors to the company which originally drilled the allegedly leaking well in 1960. The defendant, Phillips Petroleum Company, is the current successor to the company which drilled the well and a succession of entities who owned or had responsibility for the well over the ensuing years. Magnolia sought damages consisting of the costs of plugging the well and cleaning up the property, and diminution in its value. The trial court awarded Magnolia $4,500,000 for the cost of plugging the well and for cleaning up the site. Both sides have appealed specifying a multitude of errors.
The threshold question is whether the district court had jurisdiction over the subject matter of the lawsuit or whether jurisdiction was under the Louisiana Commissioner of Conservation. Before addressing the substance of this problem, a review of the pleadings demonstrates how this issue was raised.
This suit was filed in September, 1985, and was initially removed to the federal court by Phillips based upon alleged diversity of citizenship between the parties. In federal court, Phillips filed an answer in which it asserted that Magnolia's petition failed to state a cause of action. In due course, the case was remanded back to the *734 state court because of the absence of complete diversity between the parties. In May, 1987, Phillips filed "restated" exceptions of no right and no cause of action in which it asserted that the Commissioner of Conservation has exclusive jurisdiction over disputes arising out of leaking wells, the plugging thereof, and the cleaning up of abandoned well sites pursuant to Title 30 of the Louisiana Revised Statutes. In connection with its exceptions, Phillips also sought a stay of the pending judicial proceedings. On May 28, 1987, the trial judge overruled the exceptions and denied the stay. Phillips invoked the supervisory jurisdiction of this court and of the Supreme Court with respect to the judgment of the trial court, but both courts declined to exercise supervisory jurisdiction.
In the meantime, at Phillips' request, the Commissioner of Conservation, pursuant to R.S. 30:6(F), called a public hearing for Monday, June 15, 1987, to consider whether the well was properly plugged and abandoned in 1982-83, whether the pits and well site were properly cleaned and closed, whether oil or other materials are presently seeping from the well site, and whether the plug and abandonment operations and the site cleanup complied with the law and orders of the Commissioner. At Magnolia's request, the hearing was continued until June 25. In the meantime, the trial of the case in court began on May 26 and was concluded on June 22.
The trial judge rendered judgment on September 3, 1987, accompanied by extensive reasons. He found that the well was not properly plugged by Phillips' predecessor and was still leaking; he approved a clean up method advanced by Phillips but held that Magnolia was entitled to the cost of doing the work; he rejected Phillips' argument that it should be permitted to do the clean-up work because he found that Phillips had been given every opportunity to do it in the past and failed; and he found that the leaking oil had contaminated more of the property than the small area where the well and pits were located.
The trial judge itemized his award to Magnolia as follows:

Properly plugging the well $2,100,000
Contingency Costs 100,000
Clean-up Costs 2,100,000
Up date Engineering Plans 212,000
 __________
 TOTAL $4,512,000.00

The judge observed that in making this award for the restoration of the land, he compared it to the market value of the land computed in this fashion: Market value $6,500,000 plus "retraction costs"$4,000,000 minus the land's residual value of $2,000,000 equals $8,500,000. However, he concluded that the "appropriate" award was $4,500,000 after "balancing the economic interests" and considering the testimony "presented primarily by defendant's experts."
On March 11, 1988, the Commissioner of Conservation issued its findings and conclusions based upon the public hearing he held on June 25, 1987. He found that the well had been properly plugged and abandoned according to law and his orders; the well was not leaking or seeping and "[m]anifestations of surface expressions of oil" were attributed to residual oil in the crater and former emergency pits; the blowout fluids and residual oil in the crater and pits constituted non-hazardous oil field waste over which the Commissioner has regulatory jurisdiction; and Phillips is responsible for further remedying of the site and the pits. The Commissioner ordered Phillips to submit a plan for the clean-up within ninety days of the order and to proceed with the clean-up and "remediation" pursuant to the plan if approved by the Commissioner.
Magnolia did not participate in the hearing although given notice and the opportunity to do so. At the time of his order, the Commissioner was aware of the outcome of the court case and the trial court's judgment of September 7. Thus, we have the unusual situation of the court and the Commissioner making original findings of fact which contradict each other and Phillips in the anomalous position of being cast in judgment for a substantial sum to enable Magnolia to perform the clean-up and "remediation" and at the same time being ordered by the Commissioner to perform the same work at its own expense. Additionally, *735 Phillips has been ordered by the court to pay Magnolia a substantial sum to plug a well which the Commissioner found is already properly plugged. We are satisfied that this state of affairs does not afford the parties with substantial justice and that neither the judgment of the trial court, nor the order of the Commissioner, should be allowed to stand. The hearings upon which these adjudications rest, while concerned with much of the same testimony and evidence as to the same issues, produced intolerably conflicting results.
The following provisions of Title 30 of the Louisiana Revised Statutes are pertinent to this discussion:
LSA-R.S. 30:1(C)
All natural resources of the state not within the jurisdiction of other state departments or agencies are within the jurisdiction of the [Department of Conservation]
LSA-R.S. 30:1(D)
... the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production, shall be within the jurisdiction of the department.
LSA-R.S. 30:4
A. The Commissioner has jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil and gas.
C. The Commissioner has authority to make, after notice and hearings as provided in this Chapter, any reasonable rules, regulations and orders that are necessary from time to time in the proper administration and enforcement of this chapter, including rules, regulations, or orders for the following purposes:
(1) To require the drilling casing and plugging of wells to be done in such a manner as to prevent the escape of oil or gas ...; to prevent the pollution of fresh water supplies by oil, gas or salt water; and to require reasonable bond with security for the performance of the duty to plug each dry or abandoned well.
(6) to prevent blow outs, caving and seepage....
(16) a. ... to regulate all surface and storage facilities incidental to oil and gas exploration, in such manner as to prevent the escape of such waste product into a fresh ground water acquifier....
By the adoption of these statutes, the legislature has clearly delegated to the Commissioner the authority to find the facts upon which the law is to be applied. O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506 (1947). Included in plaintiff's petition were allegations of fact whose resolution was squarely within the province of the Commissioner, including the questions of whether the well was properly plugged, whether it was leaking, and what procedure or plan was proper for clean-up and remediation. Because the court had no authority to consider such facts, Magnolia had no cause of action for a monetary award based upon them. Thus, the award made by the trial court must be reversed and plaintiff's suit for damages for the cost of plugging the well and clean-up of the site is to be dismissed.
This is not to say Magnolia is not entitled to any damages, but before reaching this issue, we note that our decision with respect to the authority of the court vis-a-vis the Commissioner calls for unusual action in order to avoid injustice to Magnolia.
The Commissioner's decision that the well was properly plugged and was not leaking was reached without the benefit of any input by Magnolia. The order of the Commissioner shows that his decision was reached on the basis of much the same evidence presented by Phillips to the trial court, but without the benefit of Magnolia's evidence. The trial judge repeatedly commented on the quality of the expert and lay witnesses presented by Phillips. Had Magnolia presented no evidence to the trial court, it doubtless would have reached the same conclusions as the Commissioner. On the other hand, Magnolia's evidence that *736 the well was not properly plugged and is still leaking is quite persuasive. It would surely have assisted the Commissioner in making a decision.
Ordinarily, we would be inclined to hold that a party who is given notice and opportunity to be heard and declines to participate in a hearing has waived its right to be heard and should not be given another opportunity, but the procedural background and the result of this case warrant an exception.
At the time Magnolia was notified of the Commissioner's public hearing, it had obtained a definitive judgment from the trial court refusing to accede to the Commissioner's jurisdiction. This court and the Supreme Court declined to interfere with the trial court's decision. The trial of the case went forward for twelve days with Magnolia carrying its burden with an array of expert and factual witnesses. Against this background, the Commissioner's hearing began three days after the trial was concluded. Magnolia had good reason to believe that the trial court was the proper forum in which to present its evidence and that its participation at the hearing was not required.
We have already noted that the result of these two forums conducting independent hearings on the same issue is untenable. If the two decisions are left intact, Phillips will be required to pay Magnolia to plug a well which the Commissioner held has already been plugged and to pay Magnolia to conduct a clean-up which Phillips had been ordered to conduct.
The ideal solution would be to reverse the judgment of the trial court as to the damages it awarded and to require the Commissioner to re-open his public hearing and allow Magnolia to participate along with Phillips. Unfortunately, we do not have jurisdiction over the Commissioner and cannot order him to take any action. On the other hand, we suggest that Magnolia submit a request to the Commissioner to re-open his public hearing pursuant to R.S. 30:6(F). Since he is charged with the duty of requiring abandoned wells to be properly plugged, he would surely be interested in Magnolia's evidence on the subject. In the event that the Commissioner does not comply with Magnolia's request, it can seek relief in those courts which have jurisdiction over the Commissioner.
Although we have concluded that Magnolia is not entitled to recover damages for plugging the well and clean-up, it is entitled to damages to its property resulting from the activities of Phillips and its predecessors in accordance with R.S. 31:122 and the comment thereto and the following from the original mineral lease of the property between Magnolia's predecessor in title, the Vaccaro family, and their lessee, Continental Oil Company:
"Lessee shall pay for all damages caused by Lessee's operations, including damage to all buildings, structures, flood gates, fences, timber, trees, fruit, growing crops, soil and other property of Lessors...."
Such damages are not within the jurisdiction of the Commissioner of Conservation. See for example Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125 (La. 1986); and Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969).
The trial court reasoned that this part of the lease granted a stipulation pour autrui for the benefit of the lessor's successors in title. Phillips contends that the court erred in this approach. We find it unnecessary to consider whether the theory of a stipulation pour autrui fits the problem. The lease between the Vaccaros and Continental was a recorded lease which attached a bundle of rights and obligations to the property. In the same way Continental could pass its rights along to successor lessees, its obligations would be passed along and would benefit the successors to the Vaccaros as owners of the property. See Edwards v. Jeems Bayou Production Co., 507 So.2d 11 (La.App. 2nd Cir.1987). Thus, Magnolia's right to recover is a property right arising out of the lease and attached to the property. The trial court correctly found that Magnolia is not entitled to recover in tort or in strict liability under C.C. art. 667.
*737 The damages provision in the lease obligates the lessee to pay for "all damages" it caused. This is broad enough to entitle Magnolia to the loss of the use of its property as well as the diminution in the value of the property resulting from the operations of the lessee and from their failure to make a timely restoration of the property. The present record does not provide sufficient evidence to make an award for these items. More importantly, until the Commissioner of Conservation determines whether the well is leaking and the extent of the property requiring "remediation", the court cannot make a determination of an amount to which Magnolia is entitled. Magnolia purchased this site in 1981 for development as a coal handling facility. At this time, the price of oil was projected to reach $45 per barrel and coal seemed to be the ideal alternative energy source. Under these conditions, Magnolia's investment of $6,500,000 was apparently sound. However, in a short period of time after the purchase of the property, economic conditions changed and the development of the coal handling facility was suspended in January, 1982. According to Robert W. Merrick, an expert real estate appraiser, when Magnolia made its purchase the prices of such property were the highest in history, but in 1981 "that coal bubble burst and when the price of crude started dropping and some changes in the world, the economy, all of that disappeared rather dramatically...." Merrick stated that he had not seen a major sale on the river since 1982. Merrick testified that the property consisted of 700 acres of high land and 1500 acres of marsh land. In his opinion, the property was worth $1000 per acre overall, with the high land worth $2700 per acre and the low land worth $300. Thus, he valued the property overall at $2,200,000.
Waldemar Nelson, an expert in site selection and development testified on behalf of Magnolia. He had been employed to design a coal terminal on the property and worked on the project until it was suspended in January, 1982. He testified that oil had spread from the well site as far away as two and one-half miles. He would not recommend that the property be utilized as an industrial facility until the environmental questions arising out of the well have been answered. Merrick testified that he would recommend that a client "option" the property, but the client would have to determine if there were environmental problems with the property before exercising the option.
Phillips takes the view that the only problem with the 2,200 acre tract is on the eight acre well site which forms the southeast corner of the property. In this site are four open pits containing a "pudding-like" substance consisting of oil, salt water, drilling mud and natural earth. A Phillips employee said it was "a sloppy-looking site" when he saw it in 1983 and the area around the site was soft and impossible to walk on most of the time. On the basis of the testimony he heard, as well as his own visit to the property, the trial judge found that there are "expressions" of oil over much of the property. Nelson testified that he walked in oil over much of the property and found oil two and a half miles away from the well site.
This evidence does not enable the court to determine the extent of Magnolia's loss of use of the property. It establishes that the eight acre well site is and has been useless. It also provides an inference that some additional acreage might be so adversely affected by drainage and/or seepage from the well site that it may be useless until cleaned. But, it does not establish that the entire 2200 acre site is adversely affected.
The record does not contain sufficient evidence to show what use could be made of the property. Its use as a coal terminal was not lost because of Phillips' conduct, but because of economic conditions beyond anyone's control. Its use for resale is doubtful in view of Merrick's testimony as to depressed market conditions for this type of property.
Additionally, until the Commissioner makes a final determination as to the extent of "remediation" required, the court will not be in a position to determine the extent to which Magnolia has been deprived *738 of the property's use. For example, if the Commissioner concludes and reviewing courts affirm that the only part of the property requiring remediation is the eight acre well site, the court may conclude that Magnolia was never deprived of the use of the remaining 2192 acresunless Magnolia can show that it could not use any of the property without the use of the eight acres. On the other hand, if the Commissioner finds that one hundred or five hundred acres require remediation, a different result might obtain. Another possibility is that the Commissioner may find that the spread of oil was not the result of anything within his jurisdiction like a leaking well. In this instance, Magnolia may be entitled to recover damages in court based upon the showing that this spread of oil constitutes damage to its "soil and other property...."
We have concluded that Magnolia may be entitled to damages under the lease, but it will not be in a position to prove the extent of its damages until the Commissioner makes a determination as to matters within his jurisdiction after a full hearing. Consequently, Magnolia's right to return to the trial court to assert its claim for damages after the Commissioner's hearing and judicial review are completed is reserved.
Both sides raised numerous specifications of error and argued at length over numerous issues which we have declined to address with specificity. In view of our conclusions that 1) the trial court had no jurisdiction to decide whether the well was leaking and to award any amount for Magnolia to clean up the property, and 2) Magnolia is entitled to return to the trial court to assert a claim for damages due it under the lease and to present evidence in support thereof after a new determination is made by the Commissioner, these specifications of error and issues have been disposed of.
Accordingly, the judgment of the trial court is reversed and set aside and there is judgment in favor of defendant and against plaintiff, Magnolia Coal Terminal, vacating the monetary award made by the trial court. Magnolia is entitled to request that the Commissioner re-open his public hearing to consider whether the well is leaking with the benefit of Magnolia's evidence and to avail itself of judicial review of the Commissioner's decisions in those courts which have jurisdiction over the Commissioner. Thereafter, Magnolia is entitled to return to the trial court to assert its claim for damages due it under the mineral lease and to present evidence in support thereof.
REVERSED AND RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In its application for rehearing, Magnolia relies heavily upon Phillips Petroleum Company v. Batchelor, 560 So.2d 461 (La. App. 1st Cir.1990). In our original opinion, we referred to the decision of the Commissioner of Conservation regarding Magnolia's property. Phillips appealed from that decision to the 19th Judicial District Court for the Parish of East Baton Rouge asking only that the court uphold the Commissioner's jurisdiction over the controversy. Only Phillips and the Commissioner were parties to this petition for judicial review and both were asking that the Commissioner's order be upheld. The district court dismissed the appeal because there was no justiciable controversy; neither party before the court was aggrieved by the Commissioner's order. In the cited opinion the Court of Appeal, First Circuit, affirmed the judgment.
In our original opinion, we suggested that Magnolia request the Commissioner to reopen his public hearing. We would expect him to grant this request in the interest of discharging his responsibilities under the laws of this State.
As we read the First Circuit case, the court recognized that Phillips and the Commissioner were making a collateral attack on the judgment of the Civil District Court by attempting to secure from the 19th Judicial District Court and the First Circuit an opinion holding that the Commissioner and not the Civil District Court had jurisdiction over this controversy. The Baton Rouge courts properly rejected this attempt because *739 it was a self-serving plan designed to secure a favorable judgment without the benefit of considering the adversary position on the subject of the Commissioner's jurisdiction.
The complicating factor for this court and Magnolia is the jurisdictional barrier between this court on one side and the Commissioner, the district court in Baton Rouge and the First Circuit on the other. As we pointed out previously, we cannot order the Commissioner to take any action. We can only urge him to reopen his hearing since this appears to be in the best interests of the parties, the general public and the law. Fortunately for all concerned, however, these separate jurisdictional avenues may soon converge on the doorstep of the Supreme Court which has plenary jurisdiction over the courts of appeal, the trial courts, and, ultimately, the Commissioner. If that court should agree with Magnolia on the threshold jurisdiction issue we have decided against it, the decision would indirectly undermine the decision of the Commissioner. If at that point Phillips finds itself facing double liability the Supreme Court could provide it with relief. In any event, the problem of conflicting jurisdictions may soon be solved.
We see nothing in the First Circuit opinion which alters the views we have previously expressed. On the contrary, the result of that opinion, being a refusal on the part of that court to question the action of a district court under this court's jurisdiction, bolsters our own analysis of the trial court's action in this case. The First Circuit has deferred to this court against the wishes of Phillips and the Commissioner, but by happenstance, we have decided the jurisdictional issure in their favor anyway.
Accordingly, Magnolia's application for rehearing is denied.