United States Court of Appeals,

Fifth Circuit.

No. 93-2894.

LIQUID DRILL, INC. d/b/a Pelican Mud and Milpark Drilling Fluids, Plaintiffs-Appellants,

Progress Chemical Sales Co., Intervenor-Plaintiff, Appellant,

v.

U.S. TURNKEY EXPLORATION, INC., Defendants,

PSI, Inc., Defendant-Appellee.

April 5, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, WISDOM and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

This litigation is over compensation allegedly owed to subcontractors who worked on an oil well off the coast of Louisiana. The appeal raises two issues: (1) whether the district court abused its discretion in refusing to give the plaintiff more time for discovery, and (2) whether the district court erred in granting summary judgment for the defendant. We hold that the district court did not abuse its discretion and that no genuine issue of material fact exists in this case. We AFFIRM the decision of the district court.

I

In September 1988, Senior G & A Operating Company ("SG & A") hired U.S. Turnkey Explorations, Inc. to drill an oil well 13,300 feet deep in the Gulf of Mexico. When SG & A was unable to pay U.S. Turnkey the first pay installment, SG & A approached PSI, Inc. about purchasing its interest in the well. In November 1988, SG & A assigned the drilling contract to PSI, and PSI assumed all of SG & A's rights and duties under the drilling contract with U.S. Turnkey. To secure PSI's performance, U.S. Turnkey and PSI entered into an escrow agreement. PSI deposited nearly $2 million into an escrow account to be paid to U.S. Turnkey when it completed the well.

The plaintiff-appellants, Liquid Drill, Inc., Milpark Drilling Fluids, and Progress Chemical

Sales Co. ("the plaintiffs"), are subcontractors of U.S. Turnkey who worked on the well from September 1988 to April 1989. The plaintiffs did not contract directly with PSI; they entered into contracts only with U.S. Turnkey.

U.S. Turnkey failed to drill the well to a depth of 13,300 feet, but sought compensation from PSI for the work it did complete in accordance with an arbitration clause in the drilling contract. An arbitration award ordered PSI to pay U.S. Turnkey nearly $2 million, a portion of which was designated for the plaintiffs. The plaintiffs have not received compensation for their work on the well.

The plaintiffs filed suit against U.S. Turnkey and PSI in April 1990.[1] U.S. Turnkey filed a Chapter 7 bankruptcy petition, and from that point, all issues concerning U.S. Turnkey were automatically stayed.[2] The plaintiffs are not in privity of contract with PSI, but they seek compensation directly from PSI on the theory that they are third party beneficiaries of the drilling contract between PSI and U.S. Turnkey.[3]

In November 1990, PSI moved for summary judgment, and the plaintiffs sought and received a continuance until December 1990. In January 1991, the plaintiffs filed a motion for further extension of time for discovery. The district court set July 9, 1991 as the hearing date for all motions. One week before that date, the plaintiffs filed a cross-motion for summary judgment against PSI and a motion to compel production of business records that PSI contends are privileged.

The district court denied the plaintiffs' motion for a continuance and found that PSI's motion for summary judgment was ripe for consideration. The court granted PSI's motion for summary judgment and denied as moot the plaintiffs' cross-motion for summary judgment and motion to

---

[1]The plaintiffs filed suit in the Sixty-First Judicial District of Harris County, Texas. PSI removed the case to the United States District Court for the Southern District of Texas, basing Federal jurisdiction on 28 U.S.C. § 1331 and 43 U.S.C. § 1333(a), a provision of the Outer Continental Shelf Lands Act.

[2]PSI filed a motion to disregard the stay in bankruptcy as to PSI. The district court granted the motion, and the plaintiffs do not appeal from that decision.

[3]The plaintiffs also sought recovery under a theory of quantum meruit, and the district court dismissed the claim. The plaintiffs do not raise this as an issue on appeal, and therefore they waive any argument that the dismissal was erroneous. *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1539 n. 14 (5th Cir.1984) (*citing Martin v. Atlantic Coast Line R.R. Co.,* 289 F.2d 414, 417 n. 4 (5th Cir.1961)).

compel production of business records.[4]  The plaintiffs filed a timely notice of appeal.  This Court

dismissed that appeal for lack of jurisdiction, because the decision of the district court was not a final

order.[5]  On motion of the plaintiffs, the district court dismissed U.S. Turnkey from the action, and

from the final order of the district court, the plaintiffs filed this appeal in November 1993.

The plaintiffs raise two arguments on appeal.  First, the plaintiffs contend that the district

court erred in denying the plaintiffs' motion to extend discovery.  Second, the plaintiffs contend that

the district court improperly granted PSI's motion for summary judgment and improperly denied the

plaintiffs' cross-motion for summary judgment.

## II

The plaintiffs' first argument on appeal asserts that the district court erred in denying the

plaintiffs more time for discovery.  We review the district court's denial of the motion for a

continuance for an abuse of discretion.[6]

To obtain a continuance in accordance with Rule 56(f) of the Federal Rules of Civil

Procedure, a party must specifically explain both why it is currently unable to present evidence

creating a genuine issue of fact and how a continuance would enable the party to present such

evidence.[7]  The trial judge has broad discretion to order a continuance to permit discovery to be had,

to refuse to grant summary judgment or to "make such other order as is just".[8]  The plaintiffs filed

---

[4]Record at 971.

[5]U.S. Turnkey was in bankruptcy and no final judgment had been rendered against it.  The district court's order was not certified in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, and the order, therefore, was interlocutory and not appealable.  *Liquid Drill, Inc. v. U.S. Turnkey Explor.,* No. 91-6083, 966 F.2d 675 (5th Cir. June 2, 1992).

[6]*Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 167 (5th Cir.1991).

[7]*Solo Serve,* 929 F.2d at 167 n. 25 (*citing Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990)).

Rule 56(f) provides:  Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[8]Fed.R.Civ.P. 56(f).

their motion for a continuance on January 7, 1991, arguing that PSI's motion for summary judgment was premature, because PSI filed the motion shortly after the plaintiffs filed an answer to the complaint and before either party had begun discovery.[9]

The district court did not rule on PSI's motion for summary judgment until July 9, 1991. At that time, PSI's motion for summary judgment had been pending for seven months, and ample time and opportunity for discovery had already lapsed. The district court found that the reason stated for the plaintiffs' request for a continuance was "no longer applicable", and denied the motion.[10]

A motion for a continuance is addressed to the discretion of the district court. In addition, Rule 61 forbids reversal absent prejudice to "substantial rights" of a party.[11] PSI's motion for summary judgment had been pending for seven months, and the plaintiffs had ample opportunity to conduct discovery. Further, in their appeal, the plaintiffs fail to demonstrate that the district court's denial of the motion for a continuance adversely affected their substantial rights.

Proceedings are not to be disturbed because of an error that prejudiced no one. For the forgoing reasons, we cannot conclude that the district court abused its discretion by refusing to give the plaintiffs more time for discovery. We affirm the decision of the district court.

III

The plaintiffs' second argument on appeal challenges the district court's grant of summary judgment for PSI and its denial of the plaintiffs' cross-motion for summary judgment.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[12] To withstand a motion for summary judgment, a nonmoving party who bears the burden of proof at trial must raise a genuine issue of fact

---

[9]Record at 611.

[10]Record at 975.

[11]*Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990) (*citing Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986)).

[12]Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Lockart v. Kobe Steel, Ltd. Constr. Mach. Div.,* 989 F.2d 864, 865 (5th Cir.1993).

with respect to each element of its cause of action.[13]  We review a grant of summary judgment de novo.[14]

Louisiana law, as all concede, governs this cause of action under the contract between PSI and U.S. Turnkey.  The plaintiffs contend that the contract is a third party beneficiary contract, a *stipulation pour autrui*.  As third party beneficiaries, the plaintiffs assert a direct right of action against PSI for the compensation allegedly owed to them.

The Louisiana Civil Code allows contracting parties to "stipulate a benefit for a third person".[15]  Not every promise for the benefit of a third party, however, will create in the third party an actionable right.  The existence of a *stipulation pour autrui* depends on the intention to create it.  People usually stipulate for themselves, not for third persons.

The 1984 revisions to the Civil Code clarified the law of third party beneficiary contracts in Louisiana.  Articles 1978 through 1982 articulate clearly how third party beneficiary contracts are formed, as well as parties' rights and obligations under such contracts.[16]  For the contract to be a *stipulation pour autrui,* the contract must clearly express an intent to benefit a third party.[17]  The benefit to the third party must be a direct benefit;  it may not be merely incidental to the contract.[18]  Further, the contract must clearly provide that the direct benefit to the third party forms the condition or consideration of the contract.[19]

---

[13]*Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992).

[14]*Kobe Steel,* 989 F.2d at 865.

[15]La.Civ.Code Ann. art. 1978 (West 1985).

[16]For an informative discussion of the impact of the 1984 revisions to the Louisiana Civil Code on the law of third party beneficiary contracts, see Fred McGaha, *Third Party Beneficiary Contracts,* 45 La.L.Rev. 797 (1984).

[17]*New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 467 (5th Cir.) (*en banc* ) *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984).

[18]*Id.* at 467 (quoting *HMC Management Corp. v. New Orleans Basketball Club,* 375 So.2d 700, 708 (La.App. 4th 1979), *writ denied,* 378 So.2d 1384 (La.1980)).

[19]*Broussard v. Northcott Exploration Co., Inc.,* 481 So.2d 125, 127 (La.1986);  *United Gas Pipe Line Co.,* 732 F.2d at 467.

Our task is to separate the cases in which the contracting parties expressly stipulate a benefit to a third party from those in which the benefit relied upon is merely an incident of the contract between the parties. To determine whether parties to a contract intended to benefit a third party, the Louisiana Supreme Court has adopted the necessary factors outlined by Professor J. Denson Smith in his influential article *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui:* (1) the existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the ... [promisor] will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.[20]

The plaintiffs assert they are third party beneficiaries of the contract between PSI and U.S. Turnkey. The plaintiffs contend that the language in the contract stating that PSI "shall be solely responsible and assumes all liability for all consequences of operations by both parties while on a daywork basis, including results and all other risks or liabilities incurred in or incident to such operations"[21] creates a *stipulation pour autrui.* The district court could discern no such stipulation, and neither can we.

The plaintiffs liken their case to *Andrepont v. Acadia Drilling Co.,*[22] a case in which the Louisiana Supreme Court found that contract language created a *stipulation pour autrui.* In *Andrepont* the lessor and lessee of an oil and gas lease altered a printed lease form to provide that as a condition of the contract, the lessee accepted responsibility for "all damages caused by the lessee's

---

[20]11 Tul.L.Rev. 18, 58 (1936); *see also Dartex v. Dixon,* 502 So.2d 1063, 1065 (La.1987); *Hargroder v. Columbia Gulf Transmission Co.,* 290 So.2d 874, 876 (La.1974); *Andrepont v. Acadia Drilling Co.,* 255 La. 347, 231 So.2d 347, 351 (1969).

[21]Record at 827.

[22]255 La. 347, 231 So.2d 347 (1969).

operations".[23]  The Louisiana Supreme Court found that this language created a *stipulation pour autrui,* and that a surface lessee had a right of direct action against the oil and gas lessee for crop damages.[24]

*Andrepont* is both factually and legally inapposite to the instant case.  The contracting parties in *Andrepont* clearly intended to contract for the benefit of a third party.  The parties expressly stipulated a direct benefit to third parties;  one of the contracting parties specifically assumed tort liability to all those who were damaged by its operations.[25]

Nor is the plaintiffs' case analogous to *Merco Manufacturing, Inc. v. J.P. McMichael Construction Co.*[26]  In *Merco,* a landowner contracted with a general contractor to build a manufacturing plant.  A sub-subcontractor, Merco, brought suit against the general contractor, alleging that it was a third party beneficiary of a contract between the general contractor and a subcontractor.  The written contract between the general contractor and the subcontractor specifically provided that the general contractor would make payment for supplies *jointly* to Merco and to the subcontractor.[27]  This contractual provision "gave Merco a joint right to payment" under the contract between the general contractor and the subcontractor, and the court found that Merco was an intended third party beneficiary of the contract between the general contractor and the subcontractor.  All the aspects of a *stipulation pour autrui* were present in *Merco.*  The contract demonstrated the clear intent of the contracting parties to confer a benefit on Merco.[28]  The payment provision of the

_____

[23]*Id.* 231 So.2d at 349.

[24]*Id.* at 353.

[25]The plaintiffs' reliance on *Dartez v. Dixon,* 502 So.2d 1063 (La.1987) and *Hargroder v. Columbia Gulf Transmission Co.,* 290 So.2d 874 (La.1974) is similarly misplaced.  *Dartez* and *Hargroder,* like *Andrepont,* involve contracting parties who clearly intended to contract for the benefit of third parties, and conferred by contract on the third parties the benefit of indemnification for tort damages.  *Dartez,* 502 So.2d at 1066;  *Hargroder,* 290 So.2d at 876.

[26]372 F.Supp. 967 (W.D.La.1974).

[27]*Id.* at 970 (emphasis in the original).

[28]*Id.* at 971.

contract created an advantage in favor of Merco as a condition of the contract.[29]  Finally, the benefit was a direct and not merely an incidental benefit.[30]

Unlike *Andrepont* and *Merco,* the plaintiffs in this case have not raised a genuine issue of fact whether the contract between PSI and U.S. Turnkey creates a *stipulation pour autrui.*  First, the contract does not express an intent to contract for the benefit of the plaintiffs.  Second, the contract does not contemplate conferring a benefit on the plaintiffs as its condition or consideration.  Third, the benefit the plaintiffs rely on is merely an incident of the agreement between PSI and U.S. Turnkey.  As a practical matter, PSI's payment to U.S. Turnkey may have facilitated U.S. Turnkey's ability to pay its subcontractors, but that is insufficient to create a *stipulation pour autrui* in favor of the plaintiffs.

There is a presumption that contracting parties intend to contract for themselves and not third parties.[31]  We hold that no genuine issue of material fact exists in this case.  The contract between PSI and U.S. Turnkey is a not *stipulation pour autrui,* and the plaintiffs are not third party beneficiaries of the contract.  The plaintiffs cannot bring suit directly against PSI to recover compensation for their work on the oil well, and we AFFIRM the decision of the district court granting PSI's motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment.

---

[29]*Id.* at 972.

[30]*Id.*  The plaintiffs also draw the Court's attention to *United States v. Logistic Servs. Int'l,* No. 92-3761, 1994 WL 247203 (E.D.La. June 2, 1994).  *Logistic* is, however, inapposite to the facts of this case.  In *Logistic,* the contract at issue specifically provided that one of the contracting parties, the surety of the general contractor, agreed to certify that it had paid its subcontractors and suppliers.  The court found that the subcontractors had raised a genuine issue of fact that they were third party beneficiaries of the contract.  *Id.* at * 3.  In contrast, the contract in this case does not make any reference to compensating subcontractors.  The plaintiffs' reliance on *Logistic* is unpersuasive.

[31]*Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.,* 113 La. 1091, 37 So. 980, 984 (1905).