# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 95-60089
Summary Calendar

GLYNIS H. TAYLOR,

Plaintiff-Appellant,

versus

THE CIT GROUP/SALES FINANCING, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

(5:94-CV-9)

December 21, 1995

Before POLITZ, Chief Judge, GARWOOD and STEWART, Circuit Judges.

POLITZ, Chief Judge:[*]

This is an appeal from a grant of summary judgment against Glynis Taylor and in favor of The CIT Group/Sales Financing, Inc. In light of dispositive law, and finding no genuine issue of material fact regarding Taylor's claim that the CIT rejection of less valuable substitute collateral breached the covenant of good faith and fair dealing, we affirm.

---

[*]Local rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

## Background

On September 30, 1993, Taylor and her husband, Alvin Ben Taylor, bought a new 1991 Winnebago motor home, under an installment contract, from Davis Camper Sales, Inc., in Memphis, Tennessee. Among the contract provisions was a clause providing that any insurance proceeds relating to the motor home were assigned to the seller, and that in the event of default the seller could cancel all insurance and credit any refund to the unpaid balance. Simultaneously the Taylors purchased from Farm Bureau Insurance Company a credit life insurance policy providing for payment of any remaining balance on the loan in the event of the death of either of the Taylors.

Davis Camper Sales assigned the installment contract to the CIT Group. The Taylors purchased another insurance policy from Farm Bureau Insurance Company which named CIT as payee in the event of the loss of the motor home. At some point after the credit life insurance policy was issued, Alvin Taylor was diagnosed with cirrhosis of the liver.

In September 1993 the Taylors' attorney borrowed the motor home and was involved in a mishap which resulted in its destruction by fire. Farm Bureau issued a check in the amount of $50,750 to cover the loss.

On October 22, 1993, Alvin Taylor requested that CIT accept a 1994 motor home as substitute collateral for the 1991 motor home under the terms of the original installment contract. On the same date, CIT prepared a substitution of commodity worksheet but denied the substitution on two grounds. First, according to the worksheet, the proposed substitute collateral was a downgrade. Both parties agree that the value of the 1994 motor home was approximately $5,000 less than the value of the collateral it sought to replace. The second reason was that there had been recent collection activity on the Taylors' account. CIT maintains that the Taylors had been "less than timely" with their payments. CIT decided that

2

instead of accepting substitute collateral it would exercise its right as loss payee to apply the Farm Bureau insurance proceeds to the Taylors' debt. After such application, the Taylors owed a balance of $957.11. On October 25, 1993, the attorney called CIT and allegedly told an employee that Alvin Taylor was dying and that because of the credit life insurance policy the balance on the account would be paid within 60-90 days. He further alleges that the CIT representative told him that the Taylors' account was current. On December 26, 1993, Alvin Taylor died.

The instant action followed, seeking compensatory and punitive damages from CIT for its allegedly malicious refusal to substitute collateral. Glynis Taylor alleges that had the collateral been substituted, the credit life insurance policy would have paid the balance remaining at the time of her husband's death and she would now own the 1994 motor home free and clear. The action further alleges that because of the cancellation of the credit life insurance policy, the Taylors were unable to purchase another motor home. CIT counterclaimed, alleging that Glynis Taylor owed $957.11 plus interest on the account.

The district court granted CIT's motion for summary judgment on Glynis Taylor's claim as well as on CIT's counterclaim. The court found that CIT had no duty to agree to the substitution of collateral.

**Analysis**

Glynis Taylor contends on appeal that there is a genuine issue of material fact whether CIT breached its duty to employ good faith in its decision on the substitution of collateral. She contests the reasons relied upon by CIT in denying the substitution, maintaining that whether CIT's actions were in good faith and whether there was a history of late payments are jury questions.

3

Review of a grant of summary judgment is de novo.[1] We view all facts in the light most favorable to the non-movant.[2] Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3]

To survive a properly supported motion for summary judgment, a nonmoving party who bears the burden of proof at trial must present affirmative evidence setting forth specific facts demonstrating a genuine issue of material fact with respect to an element of the cause of action.[4] A genuine dispute is one which a reasonable jury could resolve by rendering a verdict for the plaintiff; material facts are those which might affect the outcome of the lawsuit.[5] A complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial.[6] The plaintiff must be given adequate opportunity to conduct discovery in order to meet this burden.[7]

To determine whether CIT is entitled to judgment as a matter of law, we must decide which state's substantive law applies. The parties assume, without explanation, that Mississippi law governs this case, and the district court applied Mississippi substantive law, the state in which the Taylors resided and the original collateral was located. The contract

---

[1]Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc., 48 F.3d 927 (5th Cir. 1995).

[2]Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256 (5th Cir. 1995).

[3]Id.

[4]Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986); Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc., 48 F.3d 927 (5th Cir. 1995).

[5]Anderson.

[6]Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).

[7]Id.; Anderson.

4

between the parties, however, contains a choice-of-law provision specifying that the contract is to be governed by the laws of Tennessee where it was negotiated and signed. Choice-of-law determinations are subject to de novo appellate review.[8] As a federal court sitting in diversity, in order to identify the substantive law we must apply the choice-of-law rules which would be applied by the highest court of the forum state, Mississippi.[9]

The Mississippi Supreme Court has adopted Restatement (Second) of Conflict of Laws.[10] Section 187[11] of the Restatement provides that contracting parties may decide which state's laws will govern their agreement, unless three conditions are present: 1) another state has a materially greater interest than the chosen state in determining the particular issue; 2) application of the law of the chosen state would violate a fundamental policy of the state

---

[8]Duhon v. Union Pac. Resources Co., 43 F.3d 1011 (5th Cir. 1995).

[9]Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 96 S.Ct. 167 (1975); Herring Gas Co., Inc. v. Magee, 22 F.3d 603, (5th Cir. 1994).

[10]See Newman v. Newman, 558 So.2d 821 (Miss. 1990).

[11]Section 187 reads in relevant part: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

with the materially greater interest; and 3) under the criteria listed in Sections 6[12] and 188[13] of the Restatement, the state with the materially greater interest would be the state of the applicable law had the parties not made an effective choice-of-law agreement. Although the Mississippi Supreme Court has not addressed Section 187, it has indicated that the parties' intentions regarding which law governs will be respected unless it violates the public policy of the forum jurisdiction.[14] We need not make a definitive choice-of-law determination because there is no difference in the result of this case whether we apply the law of Tennessee or that of Mississippi.

---

[12]Section 6 provides in relevant part:
   (2) ... the factors relevant to the choice of the applicable rule of law include
         (a) the needs of the interstate and international systems,
         (b) the relevant policies of the forum,
         (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
         (d) the protection of justified expectations,
         (e) the basic policies underlying the particular field of law,
         (f) certainty, predictability and uniformity of result, and
         (g) ease in the determination and application of the law to be applied.


[13]Section 188 provides, in relevant part:
   (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
   (2) In the absence of an effective choice of law by the parties (see Section 187), the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:
         (a) the place of contracting.
         (b) the place of negotiation of the contract,
         (c) the place of performance,
         (d) the location of the subject matter of the contract, and
         (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
   These contacts are to be evaluated according to their relative importance with respect to the particular issue.

[14]Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 619 So.2d 908 (Miss. 1993); Miller v. Fannin, 481 So.2d 261 (Miss. 1985).

Both Tennessee and Mississippi recognize that a duty of good faith and fair dealing in performance and enforcement is implied in all contracts.[15] In Tennessee, the courts have determined that the essence of this duty depends upon the individual contract and circumstances of each case.[16] In determining the duty, Tennessee courts examine the language of the contract and the intention of the parties in order to impose a "fair and reasonable" construction of the terms.[17] The Mississippi Supreme Court has explained that the implied covenant of good faith and fair dealing requires "faithfulness of purpose" between the two parties, each acting consistent with the "justified expectations" of the other.[18] A breach of this duty is conduct violating standards of decency, fairness, or reasonableness.[19]

We have found no case in either jurisdiction addressing the question whether and

---

[15]Winfree v. Educators Credit Union, 900 S.W.2d 285 (Tenn.App. 1995); Austin Co. v. Royal Ins. Co., 842 S.W.2d 608 (Tenn.App. 1992); TSC Industries, Inc. v. Tomlin, 743 S.W.2d 169 (Tenn.App. 1987); Cenac v. Murry, 609 So.2d 1257 (Miss. 1992). Courts in the two states cite Restatement (Second) of Contracts Section 205 (1979) for this principle. Courts in both Mississippi and Tennessee have recognized that a breach of the covenant of good faith and fair dealing also may rise to the level of a tort justifying the award of punitive damages. Lewis v. Equity Nat'l Life Ins. Co., 637 So.2d 183 (Miss. 1994); Oak Ridge Precision Industries, Inc. v. First Tenn.Bank Nat'l Ass'n, 835 S.W.2d 25 (Tenn.App. 1992); but see Solomon v. First Am.Nat'l Bank, 774 S.W.2d 935 (Tenn.App. 1989) (refusing to recognize a breach of the duty of good faith as a tort). Because we find here that plaintiff failed to meet her burden of making a sufficient showing that there was a breach of the duty of good faith, we need not reach the issue whether a lender's duty sounds in tort as well as in contract.

[16]See, e.g., Oak Ridge Precision Industries, Inc. v. First Tenn. Bank Nat'l Ass'n, 835 S.W.2d 25 (Tenn.App. 1992).

[17]TSC Industries, Inc. v. Tomlin, 743 S.W.2d 169 (Tenn.App. 1987).

[18]Cenac, 609 So.2d at 1272.

[19]Id. We note that the Tennessee courts have cited Restatement (Second) of Contracts Section 205 in finding the existence of a covenant of good faith in every contract, and that the Mississippi Supreme Court's definition of the duty of good faith is taken from the Comment to that section.

under what circumstances a lender's refusal to allow the substitution of collateral violates the implied covenant of good faith and fair dealing. The contract does not discuss whether substitute collateral would be accepted, but does authorize CIT to collect any insurance proceeds relating to the motor home.

The decreased value of the proposed substitute is the first reason for CIT's denial of substitution. Glynis Taylor admits that the substitute collateral was worth approximately $5,000 less than the original motor home. She contends, however, that the lower value exposed CIT to less risk and was not a legitimate reason for denying substitution. Despite the ordinary expectation that substitute collateral must equal the value of the original collateral in order to be acceptable to the lender, she submitted no evidence and offers no explanation in support of her conclusionary allegation that a less valuable collateral somehow would benefit CIT. Despite the lack of any contractual language suggesting a right to substitute collateral, she failed to submit any evidence that the parties intended that she have the right to substitute less valuable collateral, or that she had any justified expectation that she would be allowed to do so. Nor did she offer any evidence that CIT's refusal to accept less valuable collateral was unreasonable or unfair. Thus, she has failed, under both Tennessee and Mississippi law, to set forth evidence demonstrating the existence of a genuine issue of material fact in support of her claim that the CIT rejection of less valuable collateral was a breach of its duty of good faith.

Glynis Taylor also attacked the accuracy of CIT's other reason for denying substitution -- a claimed history of late payments. CIT submitted an affidavit summarizing her history of late payment and submitted a deposition in which she responded to the question whether she made payments on time by saying "maybe some were, maybe some weren't." She submitted no evidence reflecting timeliness of payments. The only evidence offered was an affidavit by her attorney alleging that an unnamed employee of CIT admitted

8

that, on October 25, 1993, the account was not overdue. Because this affidavit does not address whether the Taylors had a history of late payment, it does not create a genuine issue of fact. Glynis Taylor contends that the entry on the CIT worksheet noting "Past Due Status: 0", refutes the allegation that she had a history of late payment. That entry is ambiguous. It may either mean that the account had never been past due, or that it was not overdue at that time. We are aware that the same worksheet made reference to recent collection activity on the Taylors' account. A single ambiguous worksheet entry on the issue of late payment, viewed most favorably to the plaintiff, is insufficient to create a genuine issue of material fact which would bar summary judgment.

Glynis Taylor has made no showing that she was given insufficient time to conduct discovery or that further time for discovery likely would benefit her case.[20] She has failed to meet her burden to oppose a properly supported summary judgment motion by setting forth evidence which would support her cause of action and demonstrate the existence of a genuine issue of material fact.

CIT also moved for summary judgment on its counterclaim that Glynis Taylor owes $957.11 and interest on the account. It produced an affidavit by a CIT employee setting forth the amount owed. There being no dispute about this counterclaim, other than an allegation of breach of the duty of good faith, we find no genuine issue of material fact and summary judgment properly issued.

AFFIRMED.

---

[20]Suit was filed on February 2, 1994; discovery began in March; and on June 14, 1994, the magistrate judge ordered a discovery cutoff date of October 1, 1994.