**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 15, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 06-31069
Summary Calendar

CYNTHIA C. KESSLER;
MARK A. TESSIER,

Plaintiffs-Appellees,

versus

NICHOLAS P. POPICH,

Defendant-Appellant.

MARK A. TESSIER,

Plaintiff-Appellee,

versus

NICHOLAS POPICH,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 2:03-CV-02883)

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Nicholas Popich appeals from the district court's judgment that he entered into an oral contract with Cynthia Kessler and Mark Tessier. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tessier and Popich first met in September 2001, and they discussed the possibility of Tessier raising funds for Biological Processors of America (BPA), a maritime-based floating waste processing facility that was to be founded by Popich. Popich told Tessier at this meeting that he planned to put $500,000 seed money into the company. Tessier's initial job as CEO would be to raise an additional five million dollars to complete a feasibility study for the project. Tessier accepted and in January 2002, began working from an office located on property owned by Popich. When Tessier raised the issue of compensation, Popich told him that he was waiting for the pre-feasibility study to be completed. Tessier also suggested that Kessler be hired as CFO of BPA, and she was offered and accepted the position. Kessler worked out of the same office space as Tessier.

Tessier and Kessler both wanted a definitive agreement about compensation, and each of them drafted an employment agreement that they presented to Popich. Tessier testified that he edited his agreement according to suggestions from Popich, but neither agreement was ever signed. In early May 2002, Popich, Tessier, and Kessler had a lunch meeting. Tessier and Kessler asked to be compensated, and Popich responded, "Yes, I guarantee it; you will be paid." Tessier testified that his annual salary was to be $175,000, starting May 1, 2002. Kessler testified that her annual salary was to be $120,000, starting May 15, 2002. After this meeting, both Tessier and Kessler began submitting invoices and receiving compensation from Popich, although never in the full amount billed on their invoices. The checks were not paid from BPA or Popich personally; instead Global

2

Remediation, Inc., another company owned by Popich, wrote checks to Tessier and Kessler. Popich testified at trial that these checks were to defray expenses, not to compensate as salary.

Tessier asked Popich about the additional money he was owed, and Popich told him that he was trying to refinance some real estate, after which he would put the $500,000 seed money in BPA, and Tessier and Kessler would be paid from these funds. Kessler also testified that she spoke regularly to Popich about compensation and that each time he guaranteed her that she would be paid.

On October 9, 2002, Popich sent Tessier a letter stating that he did "not feel that Global Remediation is in a position to continue to finance its related companies. Therefore, I must ask you to suspend our consultancy agreement until we are in a better position to move forward. . . . Please submit your invoice for time spent and please give some consideration to our financial plight and I will make every effort to see that they are paid as promptly as possible." The refinancing on the real estate fell through, and on October 31, 2002, Tessier received a letter from Popich stating that Popich had to "stop the bleeding," and that, until further notice, he could not pay Tessier. Tessier continued to work for Popich until March 2003. For the time between May 2002 and October 2002, Tessier was owed $86,892.28. Kessler testified that she learned of the "stop the bleeding" letter through Tessier. She stopped working on October 31, 2002. Her unpaid invoices totaled $48,187.71.

The district court held that Popich entered into an oral contract with Tessier and Kessler and that he was therefore responsible for the payment of their salaries between May 2002 and October 2002. The district court also found that the contract constituted a *stipulation pour autrui* under Louisiana law. Popich appeals.

## II. DISCUSSION

3

We review the district court's interpretation of the contract de novo to the extent that the contract was unambiguous. *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990). If the interpretation of the contract turns on extrinsic evidence, the standard of review is clearly erroneous. *Id.* Whether or not a contract exists at all is a question of fact that this court also reviews for clear error. *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 460-61 (5th Cir. 1995). Additionally, the existence of a *stipulation pour autrui* is a factual question reviewed for clear error. *See Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 932-33 (5th Cir. 1995). Whether or not an agency relationship exists is also "essentially a factual matter." *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 779-80 (5th Cir. 2004) (quoting *Webb v. Lagniappe Hosp. Corp.*, 714 So.2d 901, 904 (La. Ct. App. 1998)).

Under Louisiana law, contracts in excess of $500 "must be proved by at least one witness and other corroborating circumstances." La. Civ. Code Ann. art. 1846. The party seeking to enforce performance bears the burden of proving the existence of the contract by a preponderance of the evidence. *B.M. Albrecht Elec., Inc. v. Griffin*, 413 So.2d 246, 247 (La. Ct. App. 1982). The corroborating evidence need only be general in nature; each specific detail of the alleged contract does not need to be corroborated. *Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc.*, 735 So.2d 41, 43 (La. Ct. App. 1999). The trial judge has great latitude in what to accept as corroborating evidence. *B.M. Albrecht Elec.*, 413 So.2d at 247.

Under La. Civ. Code Ann. art. 1978, a "contracting party may stipulate a benefit for a third person called a third party beneficiary." "The true third party beneficiary is never a party to the contract. He is never a promisee. The promisee is the stipulator and the promise runs to him [the promisee] and is merely in favor of the third party." *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of*

4

*St. Mary*, 923 So.2d 27, 33 (La. Ct. App. 2005) (quotations and citations omitted), *rev'd on other grounds*, 939 So.2d 1206 (La. 2006). This type of contract is known in Louisiana as a *stipulation pour autrui*. A *stipulation pour autrui* is "never presumed," *Boyte v. La. AG Credit PCA*, 899 So.2d 765, 769 (La. Ct. App. 2005), but it "may be implied from a consideration of the agreement as a whole, as well as by express stipulation." *Joseph*, 923 So.2d at 34. "[T]he intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear." *Boyte*, 899 So.2d at 769. A *stipulation pour autrui* need not be in writing. *Joseph*, 939 So.2d at 1215 & n.14.

Essentially, Popich asks this court to review the district court's factual determinations that an oral contract was formed and that Popich entered into this contract in his personal capacity with the intent that a benefit would accrue to BPA through his actions. He contendsthat there was not a valid oral contract or in the alternative that he was serving as an agent of BPA if a contract was indeed formed.

First, we find no clear error in the district court's determination that two oral contracts were created between Popich and the two plaintiffs. The testimony of each of the plaintiffs was enough to answer the requirement that a witness testify as to the formation of the contract. Testimony by the plaintiff is not barred from fulfilling the statutory requirement that a witness testify as to the formation of the contract. *Gulf Container Repair Servs.*, 735 So.2d at 43. While Popich points to this testimony as self-serving, he does not deny the substance of what was said. Therefore, the district court did not err in finding the first statutory requirement satisfied.

Additionally, the other evidence relied on by the district court was sufficient to serve as corroborating evidence. The court relied on invoices submitted by Tessier and Kessler to Popich, as well as evidence from time sheets that Tessier and Kessler were paid by Global Remediation but were

5

still owed additional money. These kinds of documents are competent to serve as corroborating evidence. *See Gulf Container Repair Servs.*, 735 So.2d at 43-44 (allowing unchallenged invoices that the defendant had partially paid to serve as corroborating evidence). Popich points to the unsigned employment agreements that Tessier and Kessler drafted as evidence that tends to disprove the creation of a contract. While these contracts were never actually executed, this evidence has no bearing on what took place between Popich and the plaintiffs in early May 2002 and thus does not negate the plaintiffs' evidence of corroborating circumstances.

Secondly, we do not find that the district court clearly erred by finding that Popich entered into a *stipulation pour autrui* rather than entering into a contract as an agent of BPA. While there is some evidence that supports Popich's theory of the case, such as the fact that Popich told Tessier that he would be paid from funds that were put into the BPA's account, the district court did not clearly err because there were also circumstances that support its finding. For instance, Popich paid Tessier and Kessler with funds from Global Remediation, something that only he in his personal capacity, not BPA, could have done. Additionally, BPA was unable to pay the plaintiffs because it had no funds; only Popich's promise in his personal capacity could have induced the plaintiffs to keep working. When viewing the circumstances surrounding the contract as a whole, the district court did not err in finding that the parties manifestly intended their oral contract to benefit BPA.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

6